## UNITED STATES v. PLAYA DE FLOR LAND & IMPROVEMENT CO.

### No. 11496.

Circuit Court of Appeals, Fifth Circuit.

Jan. 21, 1947.

Rehearing Denied May 24, 1947.

---

John F. Sonnett, Asst. Atty. Gen., Claims Division, Dept. of Justice, Brice Toole, Principal Atty., Dept. of Justice, of Washington, D. C., and Daniel E. McGrath, U. S. Dist. Atty., of Ancon, Canal Zone, for appellant.

George R. Shields, of Washington, D. C., and Chauncey P. Fairman, of Cristobal, Canal Zone, for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This suit in the District Court of the Canal Zone was brought against the United States in the name of Playa de Flor Land and Improvement Company to fix the just compensation to be paid for the taking by executive order under Congressional authority of lands in the Canal Zone for purposes connected with the Panama Canal. The authority for the suit, and for this appeal from the award of a value of $164,490 in 1912, increased by interest to $491,002, is Private Act No. 165, 48 Stat. p. 1361, approved May 21, 1934, which reads: "Be it enacted by the Senate and House of Representatives * * *, That jurisdiction is hereby conferred upon the District Court of the Canal Zone to hear and determine, but subject to the provisions for appeal as in other cases * * *, the claim of the Playa de Flor Land and Improvement Company against the United States on account of property taken by the United States in the Canal Zone."

A prior suit to this was filed under the Act and some evidence was taken, but many witnesses were dead and the suit was dismissed. On August 10, 1939, 53 Stat. p. 1532, the Private Act was amended by adding: "Sec. 2. All competent testimony, exhibits, or other evidence heretofore admitted in evidence in any proceeding heretofore had under authority of this Act and all competent testimony, exhibits, or other evidence heretofore admitted in evidence in the cases docketed in said court as numbers 1 and 3, and, respectively, entitled 'Playa de Flor Land and Improvement Company, a joint-stock corporation, Plaintiff vs. Eusebia Diaz, et al., and The Panama Railroad Company, a corporation,

defendants', and 'The Panama Railroad Company, a corporation, Plaintiff vs. J. H. Stilson, W. Andrews, and C. P. Fairman, as the successors in interest and estate to Eufracis C. De Villalobos, et al., defendants,' shall be received in evidence for the same purpose as heretofore admitted, in any suit brought or to be brought under this Act, as amended: Provided, That such evidence shall be subject, however, to any objection that the United States may interpose as to relevancy, materiality, or competency other than the objection of the witnesses not being produced in person." The named suits Nos. 1 and 3 involved portions of the land in controversy, but the United States was not a party.

The record before us includes unabridged not only the proceedings in this case, but the entire record in the former suit brought under the Private Act, and in suits Nos. 1 and 3, with all exhibits so far as they could be recovered; and in addition the record and proceedings in the predecessor court in the Canal Zone in a litigation brought in 1908 about some of the land, in which the United States intervened, which is asserted by the United States to be res judicata as to that land. On this large and complicated record the district judge rendered an opinion and findings and conclusions which themselves cover over 250 pages. It is impractical to make a detailed statement of the entire case. We will state and decide only the principal questions argued here.

■ 1. The Private Act does not create the Playa de Flor Land and Improvement Company a corporation, or joint stock company, capable of suing in its own name. It does not intend to confine relief to such an artificial person, but intends that the claim known and referred to as the claim of that Company shall be heard and determined, whether the Company be an artificial person or an association of natural persons. The Act intends that the hearing and determination shall be had in the way that courts usually try cases, except that proper evidence theretofore received in the cases which it mentions should be admitted, notwithstanding the witnesses involved are not produced. The witnesses in fact are nearly all dead. Otherwise the usual rules of evidence apply.

2. Much argument is expended on the question whether Playa de Flor Land and Improvement Company was a corporation de jure, de facto, a special partnership, or just an association of joint adventurers. The evidence is that certain persons in 1910 undertook in the Canal Zone by petition to the court to form a corporation, attempting to follow the law of the Republic of Panama. The United States insists that this law was not of force in the Canal Zone; and if it was, there was not the necessary executive consent to the incorporation; that there was indeed no law in force whereby a corporation could be formed, so that this could not be a corporation either de jure or de facto. The asserted conclusion is that there is no proper plaintiff and no suit, and dismissal is prayed.

■ We think it unimportant what the Playa de Flor Land and Improvement Company was in 1910 or in 1912 when the United States took the land. The evidence is uncontradicted that 13 persons who were associated under that name had certificates of shares showing their proportional interests, and elected officers and kept minutes after the manner of a corporation; that the sole business done was the acquisition and intended development of this land for residential and business purposes; when the land was taken the Company "collapsed", having no property except this claim against the United States; no further meetings were held, or officers elected, or business done. After many years we may treat any franchise or status as an artificial person to have been abandoned, and a de facto dissolution to have occurred. 19 C. J.S., Corporations, § 1638, Page 1412; 13 Am.Jur.,Corporations, § 1293; In re Hool Realty Co., 7 Cir., 2 F.2d 334; Hentschel v. Fidelity & Deposit Co., 8 Cir., 87 F.2d 833.

The surviving associates and the heirs or representatives of those deceased severally employed one Weigle as their attorney in fact in respect of this claim, and he for them obtained the passage of the Private

Act and Amendment and employed the attorneys to file this suit. The petition as brought states: "The plaintiff Playa de Flor Land and Improvement Company is an unincorporated association of individuals (naming 13 persons) associated together in 1910 for the purchase and handling of certain lands * * * The parties above named became the joint owners of said lands, title thereto being taken in the name of Playa de Flor Land and Improvement Company"; and the percentage of ownership of each individual is set out. Throughout the petition the "joint owners" are referred to, and the prayer is for a recovery by "said joint owners under the name of Playa de Flor Land and Improvement Company". The petition is not that of a corporation, but of individual associates using a collective name.

■ The United States challenged the authority of the counsel for the plaintiffs to act as such and a hearing was had in which it appeared that eight of the 13 named individuals were dead, but that Weigle held powers of attorney from the living and the representatives of those deceased, but some of the representatives had since died, so that a question remained of the proper representation of those interests. The judge then ordered that the suit be amended so as to proceed as a class suit, there being difficulty in finding many scattered persons; the living co-owners to represent all for the purpose of trying the common issues. The amendment, however, took an awkward form in stating that the unincorporated association of individuals was suing "to the use of such individuals if living or their legal representatives, legatees, successors and heirs if dead". But the judge treated it as accomplishing what he had ordered, and the final decree provided that the recovery in behalf of all should be paid into court and not to the Company, to be distributed by supplemental decrees to those who should prove their several interests in it. Thus handled the suit is maintainable in spite of technical defects. It does not matter what the Company originally was; its sole asset now belongs to its shareholders and they and the United States will be protected by the re-

sult, and the object of the Private Act will be accomplished.

■ 3. A suit was started in 1908 by the then occupants of one of the tracts of land, designated in the petition as No. 1, by the descendants of Feliciano Villalobos, Sr., to recover possession of certain portions of it from several alleged trespassers and to quiet title, in which the United States intervened to assert a paramount title under the then recent treaty with the Republic of Panama. It was won in the trial court by plaintiffs, the judgment taking no notice of the intervention of the United States. The defendants and the United States appealed to the Supreme Court of the Canal Zone and as it appears reported in Villalobos, et al., v. Foleston, et al., United States, Intervenor, 2 Canal Zone Reports, p. 34, the judgment was reversed, the opinion summing up the review of the evidence thus: "The Complainants failed to produce proof establishing title, or evidence of any act or acts justifying a decree of title, and having so failed it is immaterial as to other minor questions involved. Without title or evidence of a rightful claim to it there is no foundation upon which the court could adjudicate a decree, be the same legal or even equitable. * * * It is therefore ordered and adjudged and decreed that the decision of the trial court in overruling the motion to dismiss the action at the close of the evidence offered by the Complainants be and is reversed and the cause is hereby dismissed with judgment against Complainants for all accumulated costs. Let the same be so certified." It does not appear that anything was ever certified to the lower court, but it does appear that the cause remained open there till it was marked "Settled" two years later. We do not think a res judicata is established, though the land described in that suit is the same as described in tract No. 1 of this suit. We have no duly certified final judgment of any court. The published Canal Zone Reports do not appear to have any official status, though we look to them as reliable authority in ascertaining the law in the Canal Zone. So far as we know they were privately compiled as the old English and

American reports were. Moreover no judgment was pronounced in either court on the paramount claims then put forward by the United States, but the issues tried were those between the plaintiffs and the alleged trespassers. Had the first judgment stood we do not think it would have concluded the United States here, for the title it now claims is under the Panama Railroad Company which was not a party to the Villalobos suit. The reversal and the making of an opposite decision ought therefore not to be an estoppel, for estoppels by judgment are mutual. The truth is that the Panama Railroad Company's title and rights were not then in issue and the paramount claim asserted by the United States was not tried.

Nor is the evidence taken in this Villalobos suit admissible by virtue of the Private Act which does not refer to it. If any of it is admissible it must be because of the general principles of evidence which may be applicable, or because it was properly admitted in the cases named in the Act.

■ 4. On the question of value, mere offers to purchase are not evidence. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed 211. So also the negotiations for a compromise by the United States are not admissible. 31 C.J.S., Evidence, § 285, pages 1038, 1039. We understand from the opinion of the Judge that he did not consider either.

■ He did, however, after the argument of the case and while he had it under advisement, discover some other records and documents and included them in this record without reopening the case or notifying counsel. This was error, but the evidence thus added is not of controlling importance and will be disregarded by us.

■ 5. We may review the fact findings of the judge, and if clearly erroneous we may correct them. We have authority under 47 Stat. p. 817, 48 U.S.C.A. § 1356, Canal Zone Code, § 7-61, "To render such judgments as in the opinion of the said appellate court should have been rendered by the trial court in all cases whereof original trial jurisdiction is in the district court". Where there is no jury verdict this authority extends to correction of errors of fact as well as of law, giving the usual due regard to the opinion of the judge who heard and saw the witnesses testify.

■ 6. The title to four tracts, each described in the petition by metes and bounds and courses and distances, according to surveys made since 1906, is involved. The plaintiffs have the burden of sustaining their claim that in taking the land included in these surveys the United States took their land, and to show its value. The taking in December, 1912, is admitted. At that time the Panama Railroad Company was claiming the territory embracing all the tracts under grants made to it by the predecessor governments of Republic of New Granada and United States of Columbia during the last half of the 19th Century, but which excepted lands already in private ownership. The Railroad Company was a party in the suits No. 1 and No. 3 mentioned in the Private Act, which involved parts of the land in controversy, but there was no adjudication made. If any of the land taken was that of Panama Railroad Company the compensation for it would be owing to that Company, but in 1919 a settlement and quitclaim was made between the United States and the Railroad Company by which all the latter's claim to land and compensation was released. The question remains whether the land here involved, or any of it, was in the private ownership of plaintiffs and so did not belong to the Railroad Company.

Under the laws of the above mentioned predecessor governments the title originally in the State could be divested by grants made by high officers. There was also a law of 1848 whereby an actual settler and cultivator could claim up to 10 fanegados (about 53 acres) of public unoccupied land, and after public denouncement and due proceedings in court could obtain an adjudication of title. Prior to 1882 larger or smaller tracts of public unoccupied land not devoted to specific public uses could pass to actual occupants by a prescriptive title, the occupation being, like our adverse possession, manifested by enclosure, cultivation and other open acts of ownership, for 30 years if not held under a "just title";

or for 10 if under such title. "Just title", like the color of title familiar to us, does not mean a conveyance that is actually a good title, but one that appears to be a good and valid conveyance. The occupancy thereunder is construed to extend to the whole land covered by the conveyance, where there is not a conflicting occupancy. As to each of these four tracts no grant is shown. Prescription must be relied on.

7. Tract No. 1, 518 acres, called the Feliciano Villalobos, Sr., tract, is shown to have been settled on by him about 1852. In 1855 he published in the newspaper a denouncement of "The public land denominated Playa de Flor up to the Pescadoritas on the seashore and with a depth back up to the land known by the name of Santa Rita." This denouncement though later renewed, was never followed by an adjudication, and by the testimony of a learned lawyer in this case constituted no title. It is not "just title" in connection with prescription because it does not appear to be a conveyance at all, but only the first step to obtain a title from the court by adjudication. It is therefore unnecessary to consider whether the limits it stated can now be identified, especially as to the depth back from the seashore, (Playa de Flor means the beach of flowers), or whether the modern survey directed by a descendant of Villalobos correctly shows them. It appears well enough that Feliciano Villalobos, Sr., settled somewhere along Playa de Flor, raised a family and died in 1876, and that some of his descendants continued to live there till they sold out to some of the plaintiffs in 1909. It appears, too, that they planted cocoanut trees and bananas and did some cultivation otherwise. There is, however, no proof whatever as to how much or what part of the 518 acres since surveyed was so used, and the evidence generally indicates that back from the shore the country is rough and rugged. There is no evidence of enclosure. There is no reliable evidence that the family actually possessed all of the land they now claim, for any period of 30 years. Substantially the same evidence was before the Supreme Court of the Canal Zone in Villalobos vs. Foleston, et al., 2 Canal Zone Rep. 34, and was held insufficient to support a decree of title in Villalobos to the whole tract, and apparently held insufficient to evict any of the eight or 10 occupants who were sued, from the small portions they were occupying. In Diaz vs. Patterson, 3 Canal Zone Rep. at page 219, the Supreme Court of Columbia, administering the same laws, is quoted as holding thus: "In order to acquire by prescription a certain estate it is not enough to exercise possessory acts of the soil on some portions of that estate, if at the same time acts of the same sort are done on other portions on behalf of another party who claims to be the owner thereof. In such case the possession is not exclusive and cannot therefore produce the ownership of the entire estate"; and again "The possession and ownership of a person on undetermined portions of an estate cannot be recognized, inasmuch as one cannot possess nor acquire by prescription an uncertain portion of a thing." On these principles, while we think this family did have prescriptive title to some part of this tract, the finding that they possessed and acquired title to the whole tract claimed is clearly erroneous; nor can we tell how much or what land they did so possess as to acquire prescriptive title.

8. So Pedro Celestino Cerezo is shown to have lived on tract No. 2 long enough to make prescriptive title by 30 years occupancy to what he possessed, but he proved no "just title" to extend his occupancy to the limits of its description and there is no proof he possessed all or any particular part of what was surveyed as this tract. He testified he once had a deed from Ricardo de la Parra, but did not prove its contents.

9. Tract No. 3, or some part of it, was possessed by Jose Villalobos, but not shown to be for a period sufficient to ripen a prescriptive title, and the district judge so found.

10. Tract No. 4, along with tracts No. 2 and No. 3 were claimed as included in a deed (of which a copy was put in evidence) made in 1852, recorded 1856, from Manuel Furnier, Lino Mayelle, and Francisco Miranda to Ricardo de la Parra in fee simple; and the judge found the grantors had title by prescription by 10

years possession and cultivation which passed to the grantee, though he found that also that de la Parra was not shown to have occupied the land at all. There is no evidence that these grantors had any record title, and the only evidence of their possession and cultivation for 10 years is a recital they themselves made in their deed as to the lands in these words: "the same that they acquired by virtue of law, having cultivated them for more than 10 years". A recital in a deed is generally full evidence of its truth between the parties to the deed and those taking under them, but it is mere hearsay as to a stranger claiming adversely; 31 C.J.S., Estoppel, § 37, pages 213, 214; Carver v. Jackson ex dem. Astor, 4 Pet. 1, 83, 7 L.Ed. 761, unless indeed he offers it as an admission against the maker's interest. The judge quotes from the Civil Code of Panama which, derived from the law of Columbia, was of force in the Canal Zone until superseded in 1934 by the Canal Zone Code, Article 1759: "A public instrument[1] is full proof with regard to the fact of execution and the date thereof; but not with regard to the truth of the declarations which the persons interested may have made therein. In this part they are full proof only against the person making them." Of a like effect is Section 4-1865 of the Canal Zone Code: "The rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them." The judge, however, thought this recital should be taken as prima facie true because of Canal Zone Code, Sect. 4-1946, "Entries in public or other official books or records made in the performance of his duty by a public officer of the Canal Zone, or by another person in the performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein." We do not think this section has any application to the contents of a notarized and recorded deed. It may apply to the notary's certificate, and the recording clerk's entry, but neither officer is charged with knowing or certifying the truth of recitals a grantor may make. This recital of cultivation for 10 years is, as against the United States and as against the Panama Railroad Company to whose rights the United States has succeeded, a mere self-serving statement of no evidential value. Moreover it does not say the possessors had "just title", which would be necessary to make 10 years cultivation effectual to create a prescriptive title. The Harrison-Arosemena map of the Panama Railroad Company's lands pursuant to which that Company's title was confirmed in 1869 does show on it a spot marked "de la Parra 40 Fanegados", no precise location or boundaries being indicated. This is an admission by the Railroad Company that de la Parra had or claimed some 212 acres in the neighborhood. It may be that which Cerezo says was sold to him by de la Parra. Otherwise de la Parra's title seems to be only a title by reputation, several witnesses saying he had land in the Nombre de Dios locality. Such title is of no avail in court. So again we have no specific lands proved to belong in 1912 to the privies of de la Parra.

11. It thus appears that Playa de Flor Land and Improvement Company, which acquired the interests in all the lands above discussed, did get title to some land which had been acquired by their various vendors by prescription, but it cannot now be proved just how much land nor exactly where located. The witnesses who could have known are all dead, leaving no exact testimony in the records of the cases to which we may have resort. For the past 30 years the United States, in possession, has let nature take its course, which in tropical America is a rapid one, so that physical evidences of possession and improvements and cultivation have disappeared. It is not likely, therefore, that a new trial could develop the truth further. It may not be doubted, though, that the United States has taken land belonging to the Company, nor that of the land taken some of it was near the shore where the settlers mainly lived, land which was and still is the most valuable part of that taken. The Private Act did not authorize, the suit was not brought for, the recovery of land. It was for the

---

[1] That is, a duly executed and recorded one.

recovery of sums equitably due for the taking from appellee of that which it unquestionably owned—a considerable number of acres of land. The letter and spirit of the Private Act we are trying to administer, the dignity and sense of justice of the United States which has taken the property, do not require the application here of the strict rule obtaining in land suits brought in the United States.[2] It is not required that a plaintiff who cannot clearly and certainly establish the precise boundaries of his land must fail altogether in a suit for compensation for its taking. Rather is required the doing of probable and proximate justice thus. The Playa de Flor Land Company about 1910 dealt with these various possessors and claimants of land, who knew more about what there was, and where, and of what value, than anyone now knows, and in free sales they agreed on value. The district judge found as a fact that improvements of a substantial value existed on each of the Tracts Nos. 1, 2, and 3, but there were none on Tract No. 4. The lands prescriptively owned are necessarily those connected with the improvements. Tract No. 4, without possession or improvements shown was not acquired by the Company till a year after the taking by the United States, and not for money but for shares of stock in the Company. No light is thrown by this transaction on the value of the lands in the other tracts. Tract No. 1 was bought in 1909 for a total of $7,500 by members of the Company which was organized in 1910. Tract No. 2 was acquired in 1909 and 1910 by members of the Company for a total of $3,000. As to Tract No. 3 a member of the Company had a contract for legal services with the possessors, in litigation with the Panama Railroad Company, he to receive one-half the land and one-tenth of the improvements. As attorney in fact for his clients he sold the land and extensive improvements and banana and coconut plantations, described in the deed but not separately valued, to the Company for $24,674, but subject to his contract. This price therefore represents one-half the land and nine-tenths of the improvements; but only $15,674 was paid cash, the other $9,000 being partly dependent on collection by the Company from the United States (which at the date of the deed had taken the land) or sales by the Company to others. While the exact aggregate of these sales prices is in some doubt, the evidence in the record supports, we think, a finding of a value of what was taken from the Company in 1912 of $60,000.

Just compensation ordinarily includes interest on the value taken from the date of the taking. Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; Shoshone Tribe of Indians of Wind River Reservation in Wyoming v. United States, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360. It is true that where Private Acts do not provide for interest on claims arising out of tort, normally none is to be allowed. United States v. Goltra, 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776. Sometimes even in tort claims, interest is allowed where Congress ratifies the tort, Shoshone Tribe v. United States, supra. But it is always true that where property is taken under the authority of an Act of Congress[3], just compensation under the Constitution requires a sum to be allowed in addition to the principal sum as interest, or as a just part of a just compensation. Interest on the amount at the rate of 3% per annum from the date of taking until now would, we think, under all the circumstances of this case, provide this just additional amount. The decree will, therefore, be modified to award $60,000, with interest at 3% per annum from Dec. 1, 1912, to this date, or a total of $—— and as modified, it will be affirmed.

Let the appellee present within 30 days a decree thus modified for entry in this court.

Modified and affirmed.

[2] Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; United States v. O'Grady, 22 Wall. 641, 22 L.Ed. 772; United States v. Arredondo, 6 Pet. 691, 8 L. Ed. 547.

[3] Panama Canal Act, Sect. 3, 37 Stat. page 561, 48 U.S.C.A. § 1304.