Madden, Judge,
delivered the opinion of the court:
The plaintiff, the Grand River Dam Authority, is an agency of the State of Oklahoma, upon which the State of Oklahoma had conferred the right “To control, store and preserve, within the boundaries of the District, the water of Grand River and its tributaries for any useful purpose, and to use, distribute and sell the same within the boundaries of the District;” and “To develop and generate water power and electric energy within the boundaries of the District.”
Pursuant to the power granted to it, the Authority made a survey of the Grand River and adopted a plan which contemplated the erection of a dam at Pensacola, and one at Markham Ferry, and one at Fort Gibson. With funds supplied by the defendant, a grant of $8,500,000 and a loan of $11,500,000, it completed the erection of a dam at Pensacola in 1940. On May 12, 1939, the Legislature of Oklahoma authorized the plaintiff to issue $10,000,000 of bonds for the construction of dams at Markham Ferry and at Fort Gibson, and by 1940 it had acquired lands, easements, and rights-of-way, and had constructed transmission lines, substations and other facilities for the connection of the Pensacola project with its contemplated Markham Ferry and Fort Gibson dams.
However, before anything further had been done by the plaintiff, Congress, on August 18, 1941, passed the Flood Control Act (55 Stat. 638, 645), which authorized, among other things, three dam-and-reservoir projects on the Grand River, one at Pensacola, one at Markham Ferry, and another at Fort Gibson, to be constructed by the United States. On May 22,1946, before any construction had been begun by the *731 plaintiff on a dam at Fort Gibson, the defendant began the construction of a dam at this site and completed it on June 15, 1950.
The Grand River is a non-navigable stream, but it is one of the tributaries of the Arkansas River, a navigable river. The Fort Gibson project was constructed by the defendant as an integral part of a comprehensive plan for the improvement and regulation of navigation, the control of floods, and the production of hydroelectric power on the Arkansas River and its tributaries.
The plaintiff sues the defendant for the taking of its property as a result of this project. It claims that the defendant must pay compensation for (1) its water power rights at the Fort Gibson unit, (2) its exclusive franchise to develop electric power and energy at the Fort Gibson .unit, and (3) certain items of severance damages including storage and head-water benefits accruing to the Pensacola unit from the Fort Gibson unit; the cost and value of surveys, plans and specifications for the Fort Gibson unit; and the loss of the use and value of certain lands and rights-of-way theretofore acquired for the inter-connection of the Fort Gibson unit with the plaintiff’s system and for the distribution of electric power and energy from the Fort Gibson unit.
The right of a state to control and utilize the water of a non-navigable stream within its boundaries is subordinate to the right of the United States to control such waters to the fullest extent necessary to improve or regulate navigation on a navigable river to which the non-navigable stream is a tributary. There is no question as to the power of the Federal-Government to do what it has done here. Oklahoma v. Atkinson Co., 313 U.S. 508. The question before this court is whether or not it must pay just compensation for any private property it has taken in carrying out its project.
The Commerce Clause of the Federal Constitution, Article I, Section 8, gives to the United States the power to improve and regulate navigable waters without any liability for damage to private property within the bed of the navigable stream, i.e., the lands below ordinary high-water mark, and water rights in navigable streams below high-water mark are inferior to and subject to this superior navigation easement *732 and may be taken without compensation. United States v. Willow River Power Co., 324 U.S. 499; United States v. Chicago, Milwaukee, St. Paul, and Pacific Railroad Co., 312 U.S. 592; United States v. Appalachian Electric Power Company, 311 U.S. 377; United States v. Chandler-Dunbar Water Power Company, 229 U.S. 53. Where Congress has appropriated the entire flow of a navigable river for a project designed to serve the interests of navigation although other purposes are also served, the owner of fast lands above the high-water mark of the stream has no compensable property rights in the flow of the navigable river. United States v. Twin City Power Company, 350 U.S. 222.
The United States also has the power to take private property on non-navigable streams which are tributary to navigable streams, and such Government action cannot be enjoined. Oklahoma v. Atkinson Co., supra. In that case, the State of Oklahoma sought, without success, to enjoin the Federal Government from proceeding with the construction of the Denison Dam.
But if the Governmental action, under its power to regulate and improve navigable streams, results in the taking of private property located on a non-navigable stream which is a tributary of the navigable river, the United States must pay just compensation for the private property so taken. United States v. Kansas City Life Ins. Co., 339 U.S. 799; affirming 109 C. Cls. 555; United States v. Cress, 243 U.S. 316; Iowa-Wisconsin Bridge Company v. United States, 114 C. Cls. 464, cert. denied, 339 U.S. 982.
The question then becomes whether or not the plaintiff herein had property rights which have been taken by the United States. We are not faced with a situation involving water rights in the flow of a navigable stream as in United States v. Twin City Power Company, supra. The State of Oklahoma owns the waters of the Grand River, a non-navigable stream, and the State conferred on the plaintiff all the rights which is possessed in the stream. Oklahoma does not follow the common law doctrine of riparian rights but follows instead the doctrine of prior appropriation for beneficial use or the so-called “Arid States Doctrine.” Under this doctrine, the water running in a natural stream is the *733 property of the State. Oklahoma Code, Title 60, Section 60 and Title 82, Section 1, O.S. 1951; Murphy v. Kerr, 296 Fed. 536. The property taken in the Gress and Kansas Oity Life Ins. Co. cases, cited above, was the impairment of the value of land in and adjacent to a non-navigable stream. In the Kelly case, reported with the Gress decision, the property right which was taken and for which compensation had to be paid was the right to the natural flow-off of the water in the non-navigable stream. Cf. Willow River Power Company, supra, where the Supreme Court said there was not the same right to have the navigable St. Croix flow tail waters away at natural levels that there was in Kelly to have the non-navigable stream run off his tail waters at natural levels. Water rights are a property interest which if taken by the United States must be paid for. International Paper Company v. United States, 282 U.S. 399. We believe the same rule should apply to the instant case, and that the plaintiff’s vested water rights on a non-navigable stream were property rights which could not be taken without just compensation.
The other items of property which the plaintiff claims have been taken by the United States include its franchise to develop and generate electric power and energy at the Fort Gibson site, and certain items of severance damage. A license or franchise is a property right for the taking of which compensation must be paid. International Paper Company v. United States, supra; Frost v. Corporation Commission, 278 U.S. 515; Jackson v. United States, 122 C. Cls. 197; United States v. Smoot Sand & Gravel Co., Inc., 248 F. 2d 822. Cf. Southern Counties Gas Co. v. United States, 141 C. Cls. 28, in which this court found that the actions of the United States had made the franchise less valuable but did not amount to a taking of the franchise.
As to the items of severance damages, we believe that these were in the nature of indirect or consequential damages and therefore not compensable. Mitchell v. United States, 267 U.S. 341; Omnia Commercial Company v. United States, 261 U.S. 502.
The Government’s primary defense to this lawsuit was that the plaintiff did not have any private property rights *734 which could be the subject of a taking by the United States. We have answered that contention above. The Government has raised certain other defenses which we have considered and have rejected. The Government’s suggestion of an estoppel from certain meetings, letters, etc., seems to us to have no basis. The Government, of course, had the right to take the plaintiff’s property, and the only question before this court is the question of whether it could take it without compensation. The Government also urges that the present claim will be “released” by payment to and acceptance by the plaintiff of $6,500,000 authorized but so far as we know not appropriated by an Act of Congress. There is a question as to whether that authorization applied to this action at all or related solely to the Markham Ferry project. In any event, the appropriation, including the conditions, is, of course, a unilateral action on the part of the United States and cannot bind the plaintiff, unless it gets the money and thereby or otherwise releases its rights.
The plaintiff is entitled to recover just compensation for the taking of its water rights and its franchise. Tire amount of recovery will be determined in further proceedings pursuant to Eule 38 (c) .*
It is so ordered.
LittletoN, -Judge (Bet.) and Laeamore, Judge, concur.

 Judgment for plaintiff was reversed by tbe Supreme Court, 363 U.S. 229, and, pursuant to tbe order of tbe Supreme Court on remand, tbe judgment for plaintiff was vacated and withdrawn on July 22, 1960, and plaintiff’s petition dismissed.