**UNITED STATES of America,
Appellant,**

v.

**Sarah Joyce King COOPER, et al., As Executrices of the Will of M. A. Cooper,
deceased, et al., Appellees.**

**No. 17946.**

United States Court of Appeals
Fifth Circuit.

March 24, 1960.

See, also, 277 F.2d 863.

858

A. Donald Mileur, Atty., Dept. of Justice, Washington, D. C., Charles D. Read, Jr., U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., (Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Atty. Dept. of Justice, Washington, D. C.), for appellant.

John W. Maddox, Rome, Ga. (Matthews, Maddox, Walton & Smith, Rome, Ga. of counsel), for appellees.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment based on a jury verdict in a land condemnation case. Although there are other questions raised, the principal contention made by the government is that the trial court erred in permitting the jury to pass on the value of appellees' lands as having potential value as a dam site. This argument has a triple base. First, the government argues the Etowah River is navigable, and the case is therefore ruled by United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240; second, it argues that if not navigable, the Etowah was tributary to a navigable river (which is undisputed) and thus subject to the paramount right of the Federal Government's control under the Commerce Clause of the Constitution, art. 1, § 8, cl. 3, and thus the case should be ruled by the principle of the Twin City Power Co. case; third, that there was no proof on which the jury could base a finding that the use of the property for a dam site was reasonably probable within the reasonably near future and that the issue should not have been submitted to the jury.

As is strongly recommended in cases in which there is a separable disputed element of damage which the trial court feels should be passed on by the jury, the parties stipulated that separate verdicts be submitted; (a) the value with a water power element included, and (b) the value without such water power element. The jury found that value should be included for the potential water power usage and rendered a verdict for $100,000, including that value; it returned a

verdict for $57,500 if hydroelectric power value was not to be included.

In the view we take of the case it is not necessary for us to pass on the question whether the Etowah River was navigable. Nor is it necessary for us to determine whether the principle enunciated by the Supreme Court in the Twin City Power Co. case, supra, is to be expanded to cover non-navigable rivers and streams. This precise question appears to be before the Supreme Court in United States v. Grand River Dam Authority, 361 U.S. 922, 80 S.Ct. 292, 4 L.Ed.2d 239, certiorari granted on December 19, 1959, to the Court of Claims in the case of Grand River Dam Authority v. United States, 175 F.Supp. 153.

■■ We conclude that there was a complete failure of proof that there was a reasonable probability that this land would be used for a dam site within the reasonably near future [1] by any one other than the Federal Government. The trial court clearly submitted to the jury, over appellant's objection, the question whether such a reasonable probability existed The charge was:

> "No consideration shall be given to nor allowance of just compensation made for any element of value depending on future events, circumstances or a combination of circumstances which, while within the realm of possibility, had not been shown by a preponderance of the evidence to be reasonably probable in the reasonably near future after the taking date."

This part of the charge is in part the language of the Supreme Court in Olson v. United States, 292 U.S. 246, 54 S.Ct.

704, 78 L.Ed. 1236. In the Olson case the court used this language in an opinion by which it affirmed the judgment of the lower court ruling out proffered testimony seeking to establish the fact of reasonable probability. The situation is different here, because the trial court not only permitted all the proffered testimony on behalf of appellees, but also ruled that it was sufficient to warrant a jury finding in their favor.[2]

The only testimony on this issue was given by Mr. B. M. Hall, Jr., a qualified hydroelectric engineer. We do not question either this witness's qualifications or his competence in arriving at the conclusion to which he testified when he gave the firm opinion that this land *could* be used as the foundation for one end of a high dam (100 to 135 feet as testified to by him) for the creation of hydroelectric power on a commercially profitable basis.[3]

Having testified that there were no comparable sales of such fast lands on which to base an opinion of value, the witness stated that he arrived at his opinion touching on the value of this site by what he called the "steam comparison method." He was asked what in his opinion was the fair market value of the land in question as a potential dam site. His answer was, "not less than $200,000."

■■ However, in addition to proof that the land offered a site on which it would be *practicable* to build a dam for the creation of hydroelectric power, it was incumbent on the plaintiffs to prove that there was also a *reasonable likelihood* that it *would* be so used in the *reasonably near future*. Olson v. United

1. Appellees frankly concede, as they must "that in order for this special adaptability to be considered, there must be a reasonable probability of the lands in question being combined with other tracts for this special or higher use in the reasonably near future. Olson v. United States, 292 U.S. 246, 255-256, 54 S.Ct. 704, 78 L.Ed. 1236; Continental Land Co. v. United States, 88 F.2d 104, 111, certiorari denied 302 U.S. 715, 58 S.Ct. 36, 82 L.Ed. 552."

2. Both by a pretrial ruling, a continuing objection allowed by the court at the beginning of the trial, and by objection after the conclusion of the court's charge, appellant effectively raised the issue and preserved it for appeal.

3. We are here separating the issue of commercial practicability of using this land as a dam site from the other issue, i.e., the reasonable likelihood that it would be so used in the reasonably near future for this discussion.

States supra, 292 U.S. at page 256, 54 S.Ct. at page 709; United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 275, 63 S.Ct. 1047, 87 L.Ed. 1390. Any failure in this regard was clearly saved for review by the government both in its objection to the evidence and in its motion that the entire issue of water power value be excluded from the jury's consideration. There can be no doubt that the court's attention was called to the inadequate and speculative character of the testimony.

■■■ An expert witness may give his opinion based on assumptions stated by him. However, if the assumptions needed to support the opinion are not proved, or at least testified to, and are not otherwise taken to be true, the opinion is worthless. See International Paper Co. v. United States, 5 Cir., in which

we stated: "Of course, opinion evidence may of itself be substantial enough to take a case to the jury. However, an opinion is no better than the hypothesis or the assumption upon which it is based." 227 F.2d 201, 205. Here, moreover, it is plain that the witness Hall was not qualified as an expert on the issue of probability of use within the reasonably near future. He was qualified as a hydraulic engineer. As to matters touching on such problems he could testify if an adequate hypothesis was given. The question whether it was reasonably probable that the land would be used in the reasonably near future must be established to the jury's satisfaction. Hall's unsupported statement that "there was a good probability of using the Cooper lands in connection with other lands for the purpose of building a hydraulic dam there,"[4] did not supply the

4. His entire opinion on this point was expressed in the following series of questions and answers:

"Q. Could the Cooper lands have been put to use for hydro-electric purposes in the reasonably near future from June 12, 1946?

"Mr. Clemmons: I object to that without showing it was reasonably probable that there would be a demand and that the value had been enhanced for this particular value.

"The Court: That's a rather broad question. Conceivably any land of this nature could be used for hydro-electric power. I think an answer to that question would entail a great many factors, Mr. Maddox. If you lay the foundation for it, he can answer it.

"Mr. Maddox: May I ask, could the Cooper land have been put to use for hydro-electric purposes in June of 1946?

"Mr. Clemmons: Same objection your Honor.

"The Court: Do you mean profitably put to those purposes?

"Mr. Maddox: Yes, sir, I am going to ask him one step at a time.

"The Court: I'm going to let him answer the question, but, of course, as Mr. Clemmons said, there would have to be at that time a sufficient probability of that use as to then have affected the market value, but I'll let him answer the question.

"By Mr. Maddox: Q. Could it have been put to that use in June of 1946?

"A. Yes, in my opinion it could have.

"Q. Was it in fact put to that use within the next year or two?

"A. Yes, sir.

"Q. Could it have been foreseen on June 12, 1946 that it would reasonably be put to use for those purposes in the near future?

"Mr. Clemmons: I object to that unless he excludes governmental use.

"The Court: I take your question to contemplate whether or not it could have been probably used, all the elements which he has covered, confining it to that, I will let him answer the question. That is, all the physical elements.

"Mr. Maddox: Yes.

"The Court: He can answer the question.

"By Mr. Maddox: Q. Would you answer it? Could it in June of 1946 have been reasonably foreseen then that it would be put to this use in the near future? A. Yes, sir.

"Q. On June 12, 1946, was there a possibility of using the Cooper lands in connection with other lands for the purpose of building a hydro-electric dam there? A. Yes, in my opinion there was a good probability.

"Q. On June 12, 1946, would it have been economically feasible for private business to have used the Cooper Dam Site in combination with other lands to build a hydro-electric power dam and plant located there? A. Yes, sir."

It will be noted that none of the questions, until the very last one, incorporated the idea of use for a dam site exclu-

lack of evidentiary facts on which the jury could make its own finding.

Although the witness's testimony as to possible future use did not refer to future use by others than the United States government, and the United States Attorney sought to clarify this point by his objection (see footnote 4), nevertheless we can assume for the purpose of this discussion that the witness really intended to say more in that respect than he actually did say, for even on this assumption the absence of a factual basis for his opinion robbed it of any evidentiary value.

That this is so is plain when it is considered that there was evidence that the land necessary to construct the dam and reservoir involved more than 10,000 acres owned by many land owners, but there was no testimony as to how many tracts were involved; there was no evidence as to what roads, bridges, public utilities, municipal facilities and the like would be flooded, and as to which rights must therefore be secured if a high dam was to be built, and so, too, there was no evidence, not even an estimate, as to how much it would cost to assemble all the property rights needed; moreover, it was not suggested that all the property could be acquired by private negotiation at any price, much less at a commercially feasible one, without the necessity of resorting to the power of eminent domain. Certainly, there was nothing before the jury that would permit it to find that the lands would be likely to be assembled without use of eminent domain. The Supreme Court, of course, has held in United States ex rel. Tennessee Valley Authority v. Powelson, supra, that if the acquisition or assembling of property for development of a dam site requires the use of the state's power of eminent domain the likelihood of such use for the land cannot be considered in federal condemnation proceedings. To the same effect see McGovern v. City of New York, 229 U.S. 363, 372, 33 S.Ct. 876, 57 L.Ed. 1228.

■ In the absence of any evidence as to all of these matters there was no basis on which the jury could determine the issue presented to it when the trial court charged it, (see above) "no consideration shall be given to nor allowance of just compensation made for any element of value depending on future evidence, circumstances or a combination of circumstances which, while within the realm of possibility, *had not been shown by a preponderance of the evidence* to be reasonably probable in the reasonably near future after the taking date." Here there was no evidence that the use of the property for a dam site was anything more than a mere "possibility." The unsupported opinion of the hydraulic engineering expert that there was "a good probability" of using these lands in connection with others for the purpose cannot supply the basis for such a finding by the jury. For the proposition that an opinion of an expert witness not based on adequate factual foundation is without probative value, see our recent case of Nashville Bridge Co. v. Ritch, 5 Cir., 276 F.2d 171.

■■ It is not to be taken from what we have said above touching on the use by a private party of the power of eminent domain that we are here stating that the availability of the power of eminent domain in the assembling of lands for public works may not have its effect on giving value to such properties. The availability of the power of eminent domain to assist either a public utilities corporation or an individual to acquire properties for power purposes, may, and undoubtedly sometimes does, create speculative values in such lands, actually resulting in the purchase and sale of such

sively other than the government. The last question which alone related to its use "for private business" reverts to the economic feasibility of it and not to the reasonable likelihood that it will be so used.

Of course, it was perfectly clear in June 1946 that the lands could be used for hydroelectric purposes because the very dam for which they were subsequently taken had already been authorized by Congress.

properties on the market. Where a market value is created by such activity, the owner is entitled to be paid at such market value even though it has been enhanced by the public's acceptance of the possibility that the power of eminent domain may make possible the building of a power facility. This is well explained in Olson v. United States, supra, where on page 256 of 292 U.S. on page 709 of 54 S.Ct. the Court says:

> " * * * It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors not only for tracts held in single ownership but also for rights of way, locations, sites, and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account."

Here this element of eminent domain does not arise because the valuation expert testified that he knew of no sales of comparable properties. The parties seem to agree that there had been none for a period of many years anywhere in the state of Georgia.

The cases of Olson v. United States, supra; McGovern v. New York, supra, and United States ex rel. Tennessee Valley Authority v. Powelson, supra, are cases in which the Supreme Court held evidence proffered to prove the existence of a reasonable likelihood of a special use in the reasonably near future was insufficient *even to be submitted to the fact finding tribunal.* McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205, is a case in which the court held proffered testimony as to probable future use was of sufficient probative value to warrant its being considered by the trial court. The record here discloses that the evidence actually submitted fails to provide more than a basis for speculation by the jury, a thing which the Supreme Court in the Olson case said was "to be condemned in business transactions as well as in judicial ascertainment of truth."

The government also vigorously attacks evidence of a further special use, that is, use of these lands as a site for "washer ponds," a sort of artificial pond to be used in connection with surface mining. It is true that the witness initially indicated that he arrived at a value of the lands by computing the total estimated income that under this hypothesis would have been received from them in the mining process, even though such receipts would extend over a period of some ten or more years. We conclude that, however unrealistic his opinion might be if based on the assumption that the estimated figure of $153,750 payable over ten years would of itself give them a value at the time of taking of $153,750, the opinion was not solely based on such an assumption. The opinion was admissible and its weight was for the jury to assess. It is clear that the jury heavily discounted the testimony of valuation assigned to the lands as washer pond sites.

The government also contends that the trial court erred in sustaining an objection to proffered testimony by a government witness when he was asked whether in his opinion the Federal Power Commission would grant a license to build a private dam on the site in question after congressional action had been taken assuming paramount jurisdiction over the entire river system. It was, of course, a matter of great significance in any valuation of the lands in question as a potential power site that the Federal Power Commission had the undoubted power to refuse the grant of a license. Even so, we think the trial court correctly ruled that a witness could not properly attempt to testify as to his opinion on what action a federal agency might or might not take in the premises. This was a matter open to cross examination of appellees' witnesses in order to test out the degree of importance attributed by them to this possibility. It was also a matter for argument to the

jury, if the issue had otherwise been properly submitted to the jury.

We conclude that the alternative verdict of $57,500 for the value of the property, without giving effect to its potentialities as a power site must be accepted and that the verdict which included compensation for the power increment must be set aside.

The judgment is Reversed and the case Remanded for further proceedings not inconsistent with this opinion.