UNITED STATES of America,
Appellant,

v.

Percy SMITH and Ella Smith et al.,
Appellees.

No. 22320.

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1966.

Rehearing Denied April 11, 1966.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., J. Edward Williams, Acting Asst. Atty. Gen., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., for appellant.

W. DeWitt Reams, B. H. Roberts, Mobile, Ala., John L. Godbold, Camden, Ala., Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., of counsel, for Fred Henderson and Sarah E. Henderson, appellees.

Before MARIS,* RIVES and BELL, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the United States from a judgment entered by the District Court for the Southern District of Alabama in a suit brought by the Government to condemn certain lands in Wilcox County, Alabama, in connection with the establishment of the Millers Ferry Lock and Dam on the Alabama River and for the ascertainment of just compensation for the taking. We are here concerned only with a tract of 92.60 acres, designated as tract 104, for which the sum of $12,500 was deposited in court as estimated compensation. The issue of just

---

* Of the Third Circuit, sitting by designation.

compensation was tried to a jury which returned a verdict in the amount of $25,000 upon which judgment was entered. The Government filed motions for a new trial, or, in the alternative, for the remittitur of $9,500, which would have reduced the award to $15,500. Both motions were denied. This appeal followed.

Tract 104, containing 92.60 acres, was taken in March 1963 from a tract of 265 acres owned by Fred and Sarah E. Henderson. The Hendersons' property is well located along a paved state highway leading into Camden and is about one and one-half miles from the Millers Ferry community. The testimony indicates that its topography and soil are good and that its best use is for agricultural purposes, consisting of pasturing cattle and growing cotton and corn, and as timberland. Structures valued at $950 are located on the Hendersons' remaining land. Tract 104 is bottom land, which has been used only for pasture, and it borders on the left bank of the Alabama River. It grew several varieties of grass, was kept mowed, was stone-free, and contained about 17 acres of woodland.

 As compensation for the taking of this tract of land the Hendersons are entitled to receive by way of damages from the Government the fair market value of the land taken, as of the time of taking. United States v. Miller, 1943, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336; Bowie Lumber Co. v. United States, 5 Cir. 1946, 155 F.2d 225, 229. In addition, they are entitled to be compensated for any damage to their remaining land which has resulted from the severance from it of the land taken. United States v. Miller, 1943, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336; International Paper Company v. United States, 5 Cir. 1955, 227 F.2d 201, 205; Stephenson Brick Co. v. United States, 5 Cir. 1940, 110 F.2d 360. The burden of proving both elements of damage was upon the Hendersons as owners of the land taken. United States ex rel. T. V. A. v. Powelson, 1943, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390; United States v. Certain

Parcels of Land, etc., 5 Cir. 1945, 149 F.2d 81, 82.

 The fair market value of property taken to which its owners are entitled is what a willing buyer of the property would pay in cash to a willing seller of it. United States v. Miller, 1943, 317 U.S. 369, 374, 63 S.Ct. 276. In determining such market value consideration is to be given to all the facts and circumstances that would reasonably go into the making of a bargain of purchase and sale between a willing buyer under no obligation to buy and a willing seller under no obligation to sell. United States v. Leavell & Ponder, Inc., 5 Cir. 1961, 286 F.2d 398, 401, cert. den. 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855. Market value is not, of course, a quality which inheres in the property itself, but is rather a reflection of the state of mind of the public with respect to the property. That state of mind may be established by the testimony of expert witnesses who are qualified by their special knowledge, investigations and study to give an opinion as to what they believe it to be, or by evidence of transactions reasonably close in time involving other comparable property from which the market value of the property in question may be directly deduced by the fact finder himself. 5 Nichols, Eminent Domain, 3d ed., § 21.1. Evidence of such comparable transactions may also be received from expert witnesses in support of their opinions as to the value of the property involved in the litigation. Orgel, Valuation Under Eminent Domain, Vol. 1, 2d ed., § 137. In United States v. Johnson, 1960, 285 F.2d 35, 40, the Court of Appeals for the Ninth Circuit said:

"In the determination of the fair market value of property taken in a condemnation case, evidence of the price for which similar property has been sold in the vicinity may be admissible upon two separate theories and for two distinct purposes. First, such evidence may be admissible as substantive proof of the value of the condemned property, or secondly it may be admissible, not as direct

evidence of the value of the property under consideration, but in support of, and as background for, the opinion testified to by an expert as to the value of the property taken.

'The rule is well settled in most jurisdictions that ordinarily "the value of lands, or interests in realty, at a particular time, may be proved by evidence of voluntary sales of similar property in the vicinity made at or about the same time." * * * And although there is some conflict in the decisions, we think the better rule is that where the opinion of an expert witness is based in part on such sales, he should be permitted to give the details of the sales upon which he bases the opinion, although the facts so stated do not become independent evidence. * * * ' United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, 662."

See, also, United States v. Featherston, 10 Cir. 1963, 325 F.2d 539, 542–543.

In the present case the testimony as to market value of three expert real estate appraisers was presented at the trial, which was held in July 1964, about 16 months after the taking. Two of them, Phillips and Breen, were offered by the Government and the third, Williamson, by the Hendersons. In addition, the Hendersons offered the testimony as to market value of Strother, a cattle rancher who had purchased land in Wilcox County, and of Fred Henderson himself.

■ The testimony of Phillips and Breen, the two Government expert appraiser witnesses, fixed the market value of tract 104 and the timber thereon at $11,500 and $13,466, respectively, and the total damage to the Hendersons resulting from the taking, including severance damage, at $12,500 and $15,500, respectively. Williamson, the expert appraiser witness called by the Hendersons, testified that the market value of tract 104 and the timber thereon was $22,000 and that their total damage, including severance damage, was $26,150. Stro-

ther, the cattle rancher, testified that the market value of tract 104 was $250 per acre. This would aggregate $23,150 for the whole tract. He was not permitted by the district court to testify as to severance damage. Henderson himself testified that he would not put any price on tract 104 and that if he had to sell it he would not do so for less than $300 per acre. This would be $27,780 for the whole tract. It will thus be seen that the verdict of $25,000 finds it sole support in the testimony of Williamson, Strother and Henderson. In fact its support must be found in Williamson's testimony alone since, as will be shown later, Strother's testimony was not competent on this issue, while Henderson's testimony was equally lacking in probative value since it was limited to what his own asking price for the tract would be as an *unwilling* seller. United States v. Miller, 1943, 317 U.S. 369, 374, 63 S.Ct. 276. We must, therefore, consider Williamson's testimony, which the Government argues was equally lacking in probative value.

Williamson testified that the market value of tract 104 was $225 per acre. This would amount to $20,835 for the whole tract. He also testified that the timber on the tract was worth about $1,175 and that the Hendersons' severance damage was an additional $4,150 making a total of $26,150 [1] damages suffered by them from the taking. Williamson testified that his valuation of tract 104 was based on ten transactions relating to land in Wilcox County which he regarded as comparable, three sales prior to the taking, four sales subsequent to the taking, and three options to purchase land which were given after the taking. The three prior sales included one in February 1958 at $65 per acre, one in June 1961 at $100 per acre and one in November 1961 at $130 per acre. However, Williamson stated that he placed no reliance on the February 1958 sale because the seller retained so many reserved rights. The four subsequent sales included one in June 1963 at $178.57

---

1. The actual total of Williamson's figures is $26,160, but he rounded off the damage to $26,150.

per acre, one in July 1963 at $100 per acre, one in August 1963 to Auburn University which the district court excluded since the land might have been acquired by the University by eminent domain, and one in December 1963 at $87 per acre. The three options were given to Pine Hill Associates for contiguous tracts, one on September 30, 1963 and two on October 1, 1963 at $250 per acre each. A consideration was paid for each option.

The Government objected at the trial to the testimony with respect to the three options and urges on this appeal that it was error to admit evidence as to them. Its contention is that as options they represent only what a willing seller would take for his land but not, unless and until exercised by the holder of the option, what a willing buyer would give for it. As such, says the Government, the options were not admissible for consideration either by the expert appraiser witness or by the jury in determining the value of tract 104. We are constrained to agree with this contention.

▆▆▆ Evidence of the price paid for other comparable property must be confined to instances in which the transactions have been completed by an agreement between a seller and a buyer for the sale of the property for a stipulated price. It is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value. Sharp v. United States, 1903, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; Clarke v. Hot Springs Electric Light & Power Co., 10 Cir. 1932, 55 F.2d 612, 616, cert. den. 287 U.S. 619, 53 S.Ct. 19, 77 L.Ed. 537; Atlantic Coast Line R. Co. v. United States, 5 Cir. 1943, 132 F.2d 959, 963; United States v. Dillman, 5 Cir. 1944, 146 F.2d 572, 575, cert. den. 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989; Bank of Edenton v. United States, 4 Cir. 1945, 152 F.2d 251, 253; St. Joe Paper Co. v. United States, 5 Cir. 1946, 155 F.2d 93, 98; United States v. Playa De Flor Land & Improvement Co., 5 Cir. 1947, 160 F.2d 131, 136; Jayson v. United States, 5 Cir. 1961, 294 F.2d 808, 810. See, also, Annotation, 7 A.L.R.2d 781. As the Supreme Court said in Sharp v. United States, 1903, 191 U.S. 341, 348–349, 24 S.Ct. 114, 115:

" * * * It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might, in the end, prove profitable. There is no opportunity to cross-examine the person making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy, and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings. If the offer were admissible, not only is it almost impossible to prove (if it exist) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. * * * There is no chance to cross-examine as to the circumstances of the party making the offer in regard to good faith, etc. Evidence of this character is entirely different from evidence as to the price offered and accepted or rejected for articles which have a known and ready sale in the market. * * * "

In the case now before us the testimony by Williamson as to comparable sales was not offered in direct proof of market value but rather to support and indicate the basis for his testimony as to that value. Williamson testified that using, primarily, the market approach he "found land sales running from-adjusted around $75.00 an acre up to in excess of $240.00 an acre, and, after looking at a number of those sales and properties and inspecting the subject property, noting the condition of the land, topography, location and everything, [he] formed a judgment

as to the value of this property, and then distributed that value on an acreage basis on land classifications", arriving at the value for tract 104 of $225.00 per acre plus the value of the timber on the tract. When we examine the transactions which he testified formed the basis for his opinion, we find that of the three sales consummated before the time of taking the highest price paid was $130 per acre, of the three sales consummated after the time of taking the highest price paid $178.57 per acre, the lowest $87 per acre. It can thus be seen that his opinion that the market value of tract 104 was $225 per acre must have been based in substantial part on the three options at $250 per acre to which he testified, since none of the other sales which he said he considered would even come close to supporting such a value even with the adjustments which he testified he made to compensate for the time factor and other differences.

 The Hendersons argue that it was not error on the part of the district court to permit Williamson to testify as to these options since the holder of them had paid a consideration for them. We cannot agree that paying a consideration for the granting of an option to purchase property at a stipulated price changes its basic character or increases its reliability as an indicia of value. The payment of consideration makes the landowner's offer irrevocable for the period of time stipulated in the option, in the present instances two years, and thus assures the holder that amount of time in which to consider all the facts which he deems relevant and to decide at his leisure whether or not to buy. The payment thus merely binds the landowner and indicates the bona fides of his asking price. It does not in any way bind the holder to buy at that price or indicate that he regards that price as a fair one from a purchaser's standpoint. An option, even though paid for, may well have been acquired for purely speculative reasons. Indeed in this case it appears that the options were obtained in the hope of attracting industry into an otherwise agricultural area. They thus retain the taint expressed by the Supreme Court in Sharp v. United States, 1903, 191 U.S. 341, 348, 24 S.Ct. 114, 115, that "Pure speculation may have induced it, a willingness to take chances that some new use of the land might, in the end, prove profitable."

 Options which have been exercised and have thus become binding contracts of sale are in quite a different category from unexercised options, even though the payment of the price and delivery of the deed has not yet taken place. Such exercised options, when they result in a binding agreement between buyer and seller, do not differ, from a probative standpoint, from completed conveyances. United States v. Certain Parcels of Land, etc., 3 Cir. 1944, 144 F.2d 626; United States v. 2,974.49 Acres of Land, etc., 4 Cir. 1962, 308 F.2d 641; and Virgin Islands Housing Auth. v. 15.5521 U. S. Acres of Land, D.C.V.I. 1964, 230 F.Supp. 845, which are relied upon by the Hendersons, involved such exercised options. United States v. Certain Land in Baltimore County, Md., D.C. Md.1962, 209 F.Supp. 50, which they also cite, involved an offer of sale made by the landowner to the United States prior to condemnation, also a very different situation. The other cases cited by the Hendersons are State cases and, as such, are not relevant. United States v. Miller, 1943, 317 U.S. 369, 379-380, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Certain Parcels of Land, etc., 3 Cir. 1944, 144 F.2d 626, 628.

 We conclude that it was error for the district court to permit Williamson to testify as to the three options in question. It was likewise improper for him to consider them, as he admittedly did, in forming his opinion as to the market value of tract 104. His opinion as to the value of that tract, having necessarily been based, as we have seen, to a large extent on these inadmis-

sible options,[2] does not find adequate support in the comparable sales which he testified that he considered. It is, therefore, not competent to support the jury's verdict. United States v. Cooper, 5 Cir. 1960, 277 F.2d 857, 860; International Paper Company v. United States, 5 Cir. 1955, 227 F.2d 201, 205; State of Washington v. United States, 9 Cir. 1954, 214 F.2d 33, 43, cert. den. 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679; United States v. Honolulu Plantation Co., 9 Cir. 1950, 182 F.2d 172, 178, cert. den. 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602; Atlantic Coast Line R. Co. v. United States, 5 Cir. 1943, 132 F.2d 959, 963. It should be remembered that we are not here dealing with evidence presented by an expert in support of his opinion which was objected to as hearsay or as not the best evidence or as involving sales which were not comparable because too dissimilar or remote in point of time, such as was involved in International Paper Company v. United States, 5 Cir. 1955, 227 F.2d 201, 208; United States v. 5139.5 Acres of Land, etc., 4 Cir. 1952, 200 F.2d 659, 662; and Atlantic Coast Line R. Co. v. United States, 5 Cir. 1943, 132 F.2d 959, 963. On the contrary we are here concerned with evidence of transactions which were in fact mere offers and not sales and which were, therefore, of no probative value on the question of market value.

Since, as we hold, the testimony of Williamson as to the three options which he asserted were comparable and as to the market value of tract 104 which he based in part on them was incompetent it was error to permit the jury to consider it in reaching its verdict. Without that testimony the amount of the verdict was much above the range of the competent evidence of the expert witnesses and of the comparable transactions which were in evidence. Under these circumstances it would be impossible to say that the jury did not base its verdict, at least in part, upon Williamson's incompetent testimony. It follows that the Government is entitled to a new trial at which the jury will have only competent evidence of market value before it.

We cannot agree with the Hendersons' argument that even without Williamson's testimony as to the options and his opinion as to value there was sufficient other evidence to support the verdict. Their principal reliance in this connection is upon the witness Strother who, as we have seen, testified that in his opinion the value of tract 104 was $250 per acre. While the district court did permit Strother to testify as an expert, he said that he knew of no comparable sales of land, merely stating "I have knowledge of what goes on pretty generally around throughout the section, but I don't have positive knowledge of it. I know enough to form an opinion." It is true that if it appears that the property taken or other comparable property in its vicinity has not in fact been sold in recent times or in significant amounts resort must be had to other less satisfactory data and assumptions to ascertain its value. United States v. Miller, 1943, 317 U.S. 369, 374–375, 63 S.Ct. 276; St. Joe Paper Co. v. United States, 5 Cir. 1946, 155 F.2d 93, 97. But here there was evidence of a substantial number of sales of comparable land made reasonably close to the time of the taking. In this setting Strother's opinion, which was based on undisclosed assumptions and not on actual sales, for he admitted that he did not know of any, was of no probative value. As this court said in United States v. Cooper, 1960, 277 F.2d 857, 860, "An expert witness may give his opinion based on assumptions stated by him. However, if the assumptions needed to

---

2. It is true that upon redirect examination Williamson testified that excluding the three options from consideration would not change his opinion that the market value of the property was $225 per acre. This self-serving statement is, however, incredible and worthless in view of his testimony as to the figures involved in the actual sales, $87 to $178.57 per acre, when compared with the option figures, $250 per acre. Eliminating from consideration a plus factor of over $70 per acre could not help but affect any rational judgment as to value.

support the opinion are not proved, or at least testified to, and are not otherwise taken to be true, the opinion is worthless." The Hendersons also rely on the evidence given by their witnesses Brown and Fred Bain Henderson to the effect that river bottom pasture land such as tract 104, is better than upland pasture land. This evidence, however, was obviously not sufficient of itself to support the verdict.

The judgment of the district court will be reversed and the cause remanded for a new trial.