Harold Lloyd Murphy, SENIOR UNITED STATES DISTRICT JUDGE
This case is before the Court on Plaintiff's Motion in Limine (Number 1) to Exclude Evidence at Trial Related to Unaccepted Oral Offers to Purchase Property ("Plaintiff's First Motion in Limine") [64], on Plaintiff's Motion in Limine (Number 2) to Exclude Testimony and Evidence at Trial Related to Development of and Alleged Damages to Non-Unity of Title Properties ("Plaintiff's Second Motion in Limine") [65], on Plaintiff's Motion in Limine (Number 3) to Exclude Testimony and Evidence Regarding Defendant's Post-Taking Plans to Develop his Property into Subdivided Lots ("Plaintiff's Third Motion in Limine") [66], Plaintiff's Motion in Limine (Number 4) to Exclude Expert Testimony Offered by James W. Hobgood and Other Improper Testimony Regarding Valuation ("Plaintiff's Fourth Motion in Limine") [68], and on Plaintiff's Omnibus Motion in Limine (Number 5) to Exclude Various Testimony and Evidence at Trial ("Plaintiff's Fifth Motion in Limine") [69].[1]
I. Background
The Clerk set this case for trial on the Court's May 7, 2018, trial calendar. (Notice Setting Trial (Docket Entry No. 60).) On *1356 March 21, 2018, the Court entered an Order directing the Parties to file their Motions in Limine, if any, by April 4, 2018. (Order of Mar. 21, 2018 (Docket Entry No. 60).) The Court later extended that deadline to April 6, 2018. (Order of Apr. 2, 2018 (Docket Entry No. 62).)
On April 6, 2018, Plaintiff filed its Motions in Limine. (Pl.'s First Mot. Limine (Docket Entry No. 64); Pl.'s Second Mot. Limine (Docket Entry No. 65); Pl.'s Third Mot. Limine (Docket Entry No. 66); Pl.'s Fourth Mot. Limine (Docket Entry No. 68); Pl.'s Fifth Mot. Limine (Docket Entry No. 69).) The briefing processes for those Motions are complete, and the Court finds that the matters are ripe for resolution.
I. Plaintiff's First Motion in Limine
A. The Parties' Positions
1. Plaintiff's Motion
In its first Motion in Limine, Plaintiff moves to exclude testimony and evidence related to a purported unaccepted oral offer to purchase property adjacent to Defendant's property (the "subject property"), as well as any other offers that Defendant or his experts may have relied upon in forming their opinions in this case. (Pl.'s First Mot. Limine.) Plaintiff states that Defendant listed his daughter, Pamela Duckworth, as a witness expected to testify at trial that, as of November 17, 2016, the date of taking: (1) she owned three parcels of property in the vicinity of the subject property; (2) she entered into a written contract after the date of taking to sell two of those parcels for $7,000 per acre; (3) the purchaser of the two parcels made an oral offer to purchase a third parcel for $4,000 per acre, later reduced to $3,500 per acre; and (4) Ms. Duckworth rejected the oral offer. (Pl.'s First Mot. Limine at 1-2; Br. Supp. Pl.'s First Mot. Limine (Docket Entry No. 64-1) at 1-2.) Plaintiff notes that Defendant listed Bruce Penn, an appraiser, as an expert witness for valuation, and that Mr. Penn listed the unaccepted oral offer as a comparable sale that he relied upon when forming his opinions. (Pl.'s First Mot. Limine at 2; Br. Supp. Pl.'s First Mot. Limine at 2.)
Plaintiff argues that a mere oral offer cannot establish market value, and that admitting such evidence would be improper. (Pl.'s First Mot. Limine at 2-3; Br. Supp. Pl.'s First Mot. Limine at 4-5.) Plaintiff further notes that the Court previously observed that Mr. Penn's reliance on an unaccepted oral offer was impermissible in another case. (Pl.'s First Mot. Limine at 3-4; Br. Supp. Pl.'s First Mot. Limine at 5-6.) Plaintiff also points out that the individual who made the purported oral offer is not a party to the litigation and Defendant has not listed the individual as a witness, and contends that any testimony by Ms. Duckworth concerning the offer would be inadmissible hearsay. (Pl.'s First Mot. Limine at 4; Br. Supp. Pl.'s First Mot. Limine at 6-7.) Finally, Plaintiff argues that the Court should exclude evidence relating to the oral offer under Federal Rule of Evidence 403. (Br. Supp. Pl.'s First Mot. Limine at 8.)
2. Defendant's Response[2]
Defendant argues that the parcel of land at issue here is a twenty-acre tract owned *1357 by Ms. Duckworth, which abuts the subject property on the north side, and which was originally a part of a 41.54-acre tract owned by Ms. Duckworth before Ms. Duckworth sold 21.54 acres of the tract. (Br. Resp. Pl.'s First Mot. Limine (Docket Entry No. 70-1) at 2.) According to Defendant, Plaintiff's objections relate to discussions among Ms. Duckworth, Defendant, and the purchaser of the 21.54 acre tract relating to Ms. Duckworth's effort to sell the entire 41.54-acre tract. (Id. ) Defendant argues that "[t]he purchaser refused to purchase the 20-acre tract at the established price per acre for the other tract due to the TVA Transmission line which was already being constructed on [Defendant's] property adjacent to the 20-acre tract, and also due to a TVA easement to clear trees on a part of the 20-acre tract adjacent to the transmission line." (Id. ) Defendant contends that "Ms. Duckworth had first-hand knowledge of the effects of the transmission line on her property." (Id. )
Defendant notes that he generally agrees with Plaintiff that a mere unaccepted offer by a purchaser is inadmissible to establish market value. (Br. Resp. Pl.'s First Mot. Limine at 3.) Defendant, however, contends that the discussions with respect to the unsold 20-acre tract are not the typical "mere offers" that courts generally exclude. (Id. ) Instead, Defendant contends that "what we ultimately have here is a series of negotiations that resulted in a sale of a part of the property (21.54 acres) and a non-sale of the remainder (20 acres), due to existence of the power line." (Id. ) According to Defendant, "[d]uring negotiations, it was necessary for Ms. Duckworth to break out the price per acre for the raw land, separate from the improvements on [the land in the 21.54 acre parcel], because she also had to have a price for the raw land of the 20-acre parcel." (Id. ) Defendant claims that "the non-sale information regarding the 20-acre tract was never really used by Defendant['s] witnesses to determine 'market value,' " and that the appraiser instead used comparable sales, which included the 21.54-acre tract sale. (Id. at 3-4.) Defendant again reiterates that the non-sale of the 20-acre tract is not a typical "mere offer" situation. (Id. at 4.) According to Defendant, "the first-hand knowledge of Ms. Duckworth in regard to the sale of her 21.54-[acre tract] and the non-sale of her adjoining 20-acre tract is of paramount relevance in regard to (1) the negative effect of a power line upon the value of adjoining property, and (2) the actual reduction in value of the property negatively affected." (Id. )
Defendant further contends that, in this Circuit, the general rule is "that an owner of property is competent to testify regarding its value." (Br. Resp. Pl.'s First Mot. Limine at 4.) According to Defendant, Ms. Duckworth "is a lay witness in this case who expects to testify to her actual sale of the 21.54-acre tract which occurred in close proximity to the date of taking, and which is a clearly relevant sale." (Id. ) Defendant argues that he also has knowledge of those matters. (Id. at 4-5.) According to Defendant, a lay witness may give this opinion testimony under Federal Rule of Evidence 701, and Ms. Duckworth and Defendant can "testify regarding what they learned from first-hand experience with the attempted but failed effort to sell the 20-acre tract: (1) that a prospective purchaser will not pay as much for land with a large transmission line on it; and (2) the reduction in price is approximately fifty (50%) percent." (Id. at 5.) Defendant also argues that Rule 701 lay witness testimony *1358 is not subject to Daubert or expert disclosure requirements. (Id. at 5-6.) According to Defendant, this case is distinguishable from the case cited by Plaintiff. (Id. at 6.)
Defendant argues that the related TVA case in which the Court excluded portions of Bruce Penn's testimony "turned primarily upon the fact that [Mr. Penn] could not find sufficient comparable sales of 'tree-trim easements' in Gordon County to establish after-taking values," and that this case is not a tree-trim easement case. (Br. Resp. Pl.'s First Mot. Limine at 6.) Defendant further requests that the Court reconsider this decision to the extent that the Court found the inclusion of this offer in Mr. Penn's report improper. (Id. at 6-7.) Defendant argues that "Mr. Penn clearly did not use the non-sale Duckworth tract as a comparable sale," but instead "only used this information to show that the knowledge gained by Ms. Duckworth, in regard to after-take value (approximate 50% reduction in value due to power line) was consistent with his own findings." (Id. at 7.)
3. Plaintiff's Reply
In its reply, Plaintiff argues that unaccepted offers are generally inadmissible to prove market value, and contends that Defendant cites no legal authority to distinguish the cases cited by Plaintiff. (Reply Supp. Pl.'s First Mot. Limine (Docket Entry No. 81) at 2.) Plaintiff further asserts that Ms. Duckworth cannot testify as a lay witness about the value of the subject property because she has no ownership interest in the subject property, and that none of the cases cited by Defendant are controlling here. (Id. at 2-5.) Plaintiff reiterates that testimony concerning the unaccepted oral offer would be inadmissible hearsay, and that such evidence is speculative, unreliable, and confusing. (Id. at 5.) With respect to Mr. Penn's use of this offer, Plaintiff argues that the Court's ruling in Civil Action File No. 4:16-CV-0340-HLM is applicable here, and that Mr. Penn's consideration of this offer was inappropriate. (Id. at 5-7.)
B. Discussion
The Court will exclude evidence relating to the purported unaccepted oral offer. As an initial matter, Ms. Duckworth's testimony concerning the purported unaccepted oral offer would be hearsay if Defendant intends to offer the testimony for the truth of the matter. See Fed. R. Evid. 801(c) (defining hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement"). Hearsay is generally not admissible. Fed. R. Evid. 802. It does not appear that Defendant can show that the purported oral offer satisfies any hearsay exception.[3]
Moreover, "[i]t is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value." United States v. Smith, 355 F.2d 807, 811 (5th Cir. 1966)[4] ; see also Sharp v. United States, 191 U.S. 341, 349, 24 S.Ct. 114, 48 L.Ed. 211 (1903) ("Oral and not binding offers are so easily made and refused in a mere passing conversation, and *1359 under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject. Especially is this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them."); Jayson v. United States, 294 F.2d 808, 810 (5th Cir. 1961) ("This Court, as well as others, has held in numerous condemnation cases the landowner could not present evidence as to offers he had received from third parties."); United States v. An Easement and Right-of-way Over 6.09 Acres of Land, More or Less, in Madison Cty., Ala., 140 F.Supp.3d 1218, 1257 (N.D. Ala. Oct. 21, 2015) ("It is clear as a general rule ... that unaccepted offers are improper evidence by which to estimate value." (internal quotation marks and citation omitted) ); Instructions to Comm'rs, 61 F.R.D. 503, 517 (E.D. Tenn. 1974) ("It is not permissible for a landowner to state or prove what he has been offered for the property involved, nor for him to prove an unaccepted offer to purchase made by one not a party to the suit." (footnote omitted) ). Where "there were discussions but no firm plans, speculation but no contracts," admitting such evidence "would be asking the jury to imagine the best possible use the landowner dreamed of, as opposed to one he was actually in a position to negotiate at the time of the taking." East Tenn. Natural Gas Co. v. 2.93 Acres in Wythe Cty., No. 4:02CV00179, 2007 WL 2688414, at *8 (W.D. Va. Sept. 13, 2007) (emphasis in original). Instead, "[e]vidence of the price paid for other comparable property must be confined to instances in which the transactions have been completed by an agreement between a seller and a buyer for the sale of the property for a stipulated price." Smith, 355 F.2d at 811. Thus, the purported offer is not admissible in this action.
Alternatively, the Court excludes the purported oral offer under Federal Rule of Evidence 403. Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Certainly, the purported oral offer will confuse the issues and mislead the jury.[5]
In sum, the Court agrees with Plaintiff that the purported oral offer is inadmissible. The Court therefore grants Plaintiff's First Motion in Limine.
II. Plaintiff's Second Motion in Limine
A. The Parties' Positions
1. Plaintiff's Motion
In Plaintiff's Second Motion in Limine, Plaintiff seeks "to exclude testimony and evidence at trial related to development of and alleged damages to properties in which Defendant Hobgood owns only a partial interest and in parcels in which he owns no interest (collectively 'non-unity of *1360 interest properties')." (Pl.'s Second Mot. Limine at 1; see also Br. Supp. Pl.'s Second Mot. Limine at 1 (Docket Entry No. 65-1) (same).) Plaintiff also seeks to exclude testimony relating to, or the admission of, Defendant's Exhibit 11. (Pl.'s Second Mot. Limine at 2.) According to Plaintiff, Defendant Hobgood seeks compensation for damages to nine parcels of land, including five parcels that he wholly owns and four parcels that he jointly owns with Ms. Duckworth. (Br. Supp. Pl.'s Second Mot. Limine at 3.) Plaintiff argues that the Court previously dismissed Defendant's claims for damages to non-unity of title properties. (Pl.'s Second Mot. Limine at 2; Br. Supp. Pl.'s Second Mot. Limine at 4-7.) Plaintiff, however, notes that Defendant listed as Exhibit 11 the deed under which he and Ms. Duckworth acquired the non-unity of title properties. (Br. Supp. Pl.'s Second Mot. Limine at 4.) Plaintiff also contends that evidence relating to development of, and damage to, non-unity of title properties would be irrelevant. (Pl.'s Second Mot. Limine at 2; Br. Supp. Pl.'s Second Mot. Limine at 6-7.) Plaintiff further argues that this evidence would confuse the jury and prejudice Plaintiff. (Pl.'s Second Mot. Limine at 2; Br. Supp. Pl.'s Second Mot. Limine at 7.) Finally, Plaintiff argues that Defendant entered into a stipulation providing that he will not assert claims or seek damages relating to the non-unity of title properties at trial. (Br. Supp. Pl.'s Second Mot. Limine at 7-8.)
B. Defendant's Response[6]
In his response, Defendant argues that Plaintiff's Second Motion in Limine is an "overly-broad request to exclude [that] would apparently exclude any evidence of knowledge, experience, or the value of real estate from [Defendant and Ms. Duckworth], if such information was obtained from any properties partially owned by [Defendant]." (Br. Resp. Pl.'s Second Mot. Limine (Docket Entry No. 71-1) at 2-3.) Defendant contends that "[t]his entire motion is unnecessary for the reason that [Defendant] does not seek damages on the residential lots which are not fully owned by him and not crossed by the TVA easement," "[t]he parties have already stipulated that Defendant will not assert claims or seek damages to these lots at trial," and "this Court has already ruled that [Defendant] cannot recover damages from these non-unity of title lots, which is acknowledged by Defendant." (Id. at 3 (emphasis in original) (citation omitted).) Defendant argues that "there is no issue regarding identification of the parcels from [sic] which damages may be awarded at trial," as "[b]y Order from the Court, and by stipulation, it is already agreed that damages can only be awarded for the taking and adverse effects to the property wholly-owned by [Defendant]." (Id. (emphasis in original).) Defendant contends that he "does not seek any damages at trial from the non-unity of title property," and that the Motion in Limine "is effectively moot, and should be denied without further inquiry." (Id. at 4.)
Defendant nevertheless argues that the non-unity of title property is relevant, as "these three lots are a mere part of a significant number of additional residential lots (and other acreage) owned by [Defendant] and [Ms.] Duckworth, whether in joint ownership or separate ownership, located *1361 adjacent to or in the immediate vicinity of the subject property." (Br. Resp. Pl.'s Second Mot. Limine at 4.) According to Defendant, the entire parcel owned by Defendant "already consists of land used for farming AND land used for residential purposes," and "this is not one of the line of cases that disallow evidence of potential speculative residential use." (Id. at 4-5 (emphasis and capitalization in original).)
Defendant further argues that the general rule in this Circuit is that a property owner is competent to testify as to the value of the property. (Br. Resp. Pl.'s Second Mot. Limine at 5.) According to Defendant, both he and Ms. Duckworth may offer lay testimony as to the value of the subject property, lay testimony is not subject to expert witness disclosure requirements, and Plaintiff waived any objections to expert testimony by failing to file a Daubert motion. (Id. at 5-7.) According to Defendant:
[Defendant] and [Ms. Duckworth] should be authorized to provide testimony in regard to real estate matters in Gordon County, particularly with respect to their existing residential lot plan, also including but not limited to matters pertaining to (1) value opinions that consider damage to separate sections or areas of the subject property, (2) opinions that highest and best use of the property includes residential subdivisions, (3) opinions that electric transmission lines negatively impact market value, (4) evidence in conformity with existing plans for residential use, and (5) such other testimony or evidence, if any, that is not due to be excluded by the Court. [Defendant's] Exhibit 11 ... should also be allowed to show [Defendant's] residential plan.
(Id. at 7.) Defendant contends that "Plaintiff appears to have an ulterior motive in citing to the Court Order" concerning damages to non-unity of title properties, arguing that the Order "has absolutely nothing to do with the relevancy of the non-unity of title residential lots insofar as these lots are an integral part of the business of [Defendant and Ms. Duckworth]." (Id. at 8.) According to Defendant, if the Court grants Plaintiff's Second Motion in Limine, it "would improperly exclude testimony and evidence from these lay witnesses which should be allowed." (Id. )
3. Plaintiff's Reply
In its reply, Plaintiff argues that the Court should exclude evidence relating to damage to non-unity of title properties for the reasons stated in Plaintiff's initial brief in support of its Second Motion in Limine and because Defendant did not oppose that portion of the Motion. (Reply Supp. Pl.'s Second Mot. Limine (Docket Entry No. 80) at 1-2.) Plaintiff also argues that evidence relating to non-unity of title properties for purposes of showing an unwritten plan to develop a residential subdivision on Defendant's farm is inadmissible because no such plan existed on the date of taking. (Id. at 2.) Plaintiff further argues that evidence relating to Ms. Duckworth's ownership interest in non-unity of title properties is irrelevant because Ms. Duckworth does not own the subject property and because Defendant made no expert disclosures for Ms. Duckworth. (Id. at 3.) Plaintiff states that Ms. Duckworth cannot offer lay opinion testimony as to the value of the subject property because she has no ownership interest in it. (Id. ) Plaintiff notes that Defendant made no Rule 26(a)(2) expert disclosures for Ms. Duckworth, which would make her expert testimony subject to exclusion under Rule 37(c)(1). (Id. ) According to Plaintiff, because Ms. Duckworth's "undisclosed opinions are not admissible, evidence of her ownership and use of non-unity of title properties is neither relevant nor admissible." (Id. )
*1362 Plaintiff further contends that the Court should not permit Defendant to backdoor undisclosed opinion testimony relating to his alleged specialized knowledge as a developer of residential subdivisions, the market impact of transmission lines, and his knowledge of the real estate market. (Reply Supp. Pl.'s Second Mot. Limine at 3-4.) Plaintiff points out that Defendant failed to make Rule 26(a)(2) disclosures for himself, and that he did not disclose that he "purportedly has specialized knowledge and experience in the fields of development of residential subdivisions, electric transmission lines, negative impacts of electric transmission lines on market value, or that [Defendant] intends to offer opinion testimony in these disciplines at trial." (Id. at 4.) Alternatively, Plaintiff argues that "evidence proffered by Defendant in support of any such undisclosed opinion should be excluded pursuant to [Federal Rule of Evidence] 403 because it would not be relevant and would be confusing to the jury and prejudicial to Plaintiff." (Id. )
With respect to Defendant's argument that evidence relating to orange and purple properties on the map is necessary to prevent jury confusion, Plaintiff notes that the Parties can remove those parcels from the map or submit a new map at trial. (Reply Supp. Pl.'s Second Mot. Limine at 4-5.)
B. Recommendation
The Court will exclude evidence and argument relating to damages to non-unity of title properties. As an initial matter, the Court has already dismissed Defendant's claims for damages to non-unity of title properties. (Order of May 18, 2017 (Docket Entry No. 30) at 13-16; Order of June 13, 2017 (Docket Entry No. 37) at 7-8 (denying Defendant's Motion for Partial Reconsideration).) It appears that Defendant does not dispute that evidence relating to alleged damage to non-unity of title properties should be excluded. In any event, any evidence concerning this issue would not be relevant. See Fed. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action"); Fed. R. Evid. 402 (stating, in relevant part, that "[i]rrelevant evidence is not admissible").[7] Even if the evidence had some relevance, it would be subject to exclusion under Rule 403 because its probative value would be substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403.
To the extent that Defendant seeks to introduce evidence relating to non-unity of title properties for purposes of showing a plan to develop a residential subdivision on *1363 the subject property, this evidence is irrelevant because Defendant took no affirmative steps before the taking to develop the subject property as a residential subdivision. Defendant's argument that his ownership of lots in a residential subdivision developed by someone else evidences a plan to develop his farm into a subdivision does not alter this conclusion.[8]
Further, evidence relating to Ms. Duckworth's ownership interest in non-unity-of-title properties is irrelevant. Ms. Duckworth cannot offer lay testimony as to the value of the subject property because she has no ownership interest in it. To the extent that she offers expert testimony, the Court should exclude this testimony for failure to make the required expert disclosures.
To the extent that Defendant seeks to present his own undisclosed expert testimony, including his purported specialized knowledge as a developer of a residential subdivision, the market impact of transmission lines, and his knowledge of the real estate market, this testimony is expert testimony that is subject to exclusion because Defendant failed to make the required disclosures. Alternatively, this evidence is subject to exclusion under Rule 403 as irrelevant, unduly prejudicial, and likely to confuse the jury.[9]
Defendant's contentions as to the orange and purple properties on the map do not compel a different result. The Parties can remedy these concerns by removing the orange and purple properties from the map or by presenting a new map.
In sum, the Court agrees with Plaintiff that evidence and argument concerning damages to non-unity of title properties are impermissible. The Court therefore grants Plaintiff's Second Motion in Limine, excludes such evidence and argument, and excludes Defendant's Exhibit 11.
III. Plaintiff's Third Motion in Limine
A. The Parties' Positions
1. Plaintiff's Motion
Plaintiff seeks to exclude testimony and evidence related to plans to develop the subject property into subdivided lots that were prepared after the date of taking, as well as all actions taken in furtherance of those plans. (Pl.'s Third Mot. Limine at 1; Br. Supp. Pl.'s Third Mot. Limine (Docket Entry No. 66-1) at 1.) Plaintiff notes that Defendant has listed several witnesses, including Defendant, Ms. Duckworth, and Karl P. Lutjens, P.E., as witnesses who are expected to testify concerning a planned development of the subject property, as well as listing Mr. Penn as a witness who is expected to testify as to the value of the subject property. (Pl.'s Third Mot. Limine at 1; Br. Supp. Pl.'s Third Mot. Limine at 4-5.) Plaintiff also notes that Defendant has listed multiple exhibits relating to plans to develop the subject property, including Defendant's Exhibits 5, 9,[10] 41, 43, and 44. (Pl.'s Third Mot. Limine at 2; Br. Supp. Pl.'s Third Mot. Limine at 5.) Plaintiff states that "Mr. Lutjens developed a conceptual plan for an 86-lot subdivision to be built on an assemblage of four parcels of land." (Br. Supp. Pl.'s Third *1364 Mot. Limine at 3-4.) According to Plaintiff, the Court should exclude this evidence because, as of the date of taking, Defendant had not prepared or recorded a plat to subdivide the subject property. (Pl.'s Third Mot. Limine at 2; Br. Supp. Pl.'s Third Mot. Limine at 7-10.) Plaintiff also argues that the Court should exclude this evidence because the plan is for a subdivision to be built on a hypothetical assemblage of four parcels of land that had not been assembled as of the date of taking, and Defendant did not own all of those parcels. (Pl.'s Third Mot. Limine at 2-3; Br. Supp. Pl.'s Third Mot. Limine at 10-11.) Plaintiff points out that one of the parcels, consisting of twenty-acres, is wholly-owned by Ms. Duckworth, and the site plan contemplates building a road and sixteen lots on this twenty-acre parcel. (Pl.'s Third Mot. Limine at 3; Br. Supp. Pl.'s Third Mot. Limine at 11.)
2. Defendant's Response[11]
In response, Defendant contends that:
[T]he subject property owned by [Defendant] ( [f]ive contiguous tax parcels) is NOT in its entirety an agricultural parcel of land.... Instead, from the tract of land wholly owned by [Defendant], the part actually condemned and taken by [Plaintiff] consists of both agricultural tracts and residential tracts. Adjoining these tracts are other tracts, some owned solely by [Ms. Duckworth], and others owned jointly by [Defendant] and [Ms.] Duckworth. These additional tracts include agricultural tracts and residential lots. The two residential lots actually condemned by [Plaintiff] are bordered by residential lots owned jointly by [Defendant and Ms. Duckworth]. [Defendant] has stipulated for trial that he will not seek any damages for any property that is not wholly owned by him. However, the import of this information here is that [Defendant] did not suddenly dream up the idea of residential use in an effort to increase damages. Rather, [Defendant], together with [Ms. Duckworth], has been in the business of farming and real estate, including the purchase, development, and sale of residential lots, for many years in Gordon County, Georgia. This is their business, this is what they do, and it is not something new.
[Defendant] and [Ms. Duckworth] expect to testify to these matters at trial, in order to show their existing ownership of multiple residential lots in Gordon County, and in the vicinity of the subject property; and in order to show their pre-existing plan to use the subject property for residential purposes, its highest and best use. [Defendant] and [his] witnesses are also expected to show that their pre-existing plan for residential use is not speculative, but that lots could have been sold for residential purposes at or prior to the date of taking, that such actions have been reasonably practical and reasonably probable within a short period of time, that flood issues are not a barrier to residential use, and that zoning and Gordon County regulations do not prohibit such residential use. Further, Defendant is entitled to present evidence of highest and best use.
(Br. Resp. Pl.'s Third Mot. Limine (Docket Entry No. 72-1) at 2-3 (emphasis and capitalization in original).)
Defendant argues that he is entitled to show the highest and best use of the subject property. (Br. Resp. Pl.'s Third Mot.
*1365 Limine at 3-4.) According to Defendant, Plaintiff "claims that the separate or joint ownerships of [Defendant] and [Ms. Duckworth] are a barrier to consideration of the development of their separately owned parcels of land," and "[t]his claim has no merit whatsoever, given that [Defendant and Ms. Duckworth] have already been in the business of selling their jointly-owned residential lots adjacent to the subject property for a number of years." (Id. at 4-5.) Defendant contends that this case is distinguishable from the cases cited from Plaintiff, which simply involved "purely raw land without close proximity to existing development," because, here "subdivision development already exists[ ] adjacent to the subject property, and [Defendant] already has lots in this existing subdivision." (Id. at 5.) Defendant states that he will not testify to damages under the lot method, but urges the Court to adopt more recent standards. (Id. at 5-6.) Alternatively, Defendant argues that, even if the Court excludes evidence from Defendant's expert engineer showing the layout of subdivision lots on Defendant's Exhibits 43 and 44, the Court should "allow these exhibits into evidence with the lot layout removed from [Ms.] Duckworth['s] property," or remove the lots "from the entire [Defendant] and Duckworth properties," but allow the engineer "to testify as to the allowable uses of the [subject] property upon any amended maps." (Id. at 6.)
3. Plaintiff's Reply
In its reply, Plaintiff notes that "[t]he subject property consists of Defendant's 368-acre farm and two building lots in an adjoining subdivision, platted by another years ago." (Reply Supp. Pl.'s Third Mot. Limine (Docket Entry No. 79) at 2.) According to Plaintiff, "Defendant asserts that mere common ownership of his farm and building lots in another subdivision are sufficient to allow him to introduce evidence at trial relating to his unwritten plan to develop his farm as a separate residential subdivision." (Id. ) Plaintiff contends that this "argument is a red herring, is premised on mischaracterizations of fact and law, and is contradicted by the building lots' omission from the conceptual site plan prepared by Defendant's retained engineer." (Id. at 2-3.)
Plaintiff notes that Defendant purchased the 368-acre tract in 1988, has actively farmed the property since, and that the property was zoned for agricultural use at the time of the taking. (Reply Supp. Pl.'s Third Mot. Limine at 3.) Plaintiff states that Defendant purchased the building lots in a subdivision across and up the road from his farm in 2000, and "[t]he platted lots had been zoned for residential use as of the date of taking, but no home or other improvement had been built on either lot as of that time." (Id. ) Plaintiff notes:
[Defendant] argues that his ownership of two lots in the A.P. Beamer Estate subdivision is proof that he had an unwritten, pre-taking plan to develop his 368-acre farm as a residential subdivision and that Mr. Lutjens' conceptual drawings accurately represent his unwritten plan. This assertion is contrary to the factual record in this case. Defendant took no affirmative step, prior to the taking, to develop his farm as a residential subdivision. He did not hire a surveyor, a professional engineer, or a soils engineer to perform any analysis supporting his unwritten plan, and he took no affirmative step to plat or subdivide his farm. And [Defendant's] failure during the sixteen-year period between the time he purchased the building lots and the date of taking is not consistent with a plan to develop those lots as part of a planned subdivision. Rather, [Defendant] waited until after the condemnation was filed to have his litigation counsel hire an engineer to devise a *1366 'conceptual' plan to depict his farm as a hypothetical subdivision. In short, Defendant attempts to present a speculative concept as a matter of fact.
And even then, the professional engineer hired by Defendant's counsel failed to include the two building lots in his drawing. This is likely due to significant legal issues associated with the merger of lots in an existing subdivision into a new subdivision, because counsel forgot to tell Mr. Lutjens to include the building lots in the conceptual drawings, or because the details of [Defendant's] unwritten, pre-taking plans had morphed based on the Court's post-taking rulings and an evolving litigation strategy in response to those rulings. Regardless of the reasons, Mr. Lutjen's map is inconsistent with Defendant's pre-taking actions, and it should not be used to have the jury influenced by an imaginary and speculative subdivision.
(Id. at 3-4.)
Plaintiff further notes that Defendant's unwritten plan to develop his farm into a residential subdivision is not evidence of the highest and best use of the farm, but instead simply reflects the farm's special value to Defendant, which is not compensable. (Reply Supp. Pl.'s Third Mot. Limine at 5-7.) Plaintiff notes that the case law cited by Defendant supports Plaintiff's position, not Defendant's arguments. (Id. at 9-10.)
Plaintiff also argues that the Court should not permit Ms. Duckworth to offer opinions at trial because Ms. Duckworth does not have an ownership interest in the subject property and because Defendant did not make Rule 26(a)(2) expert disclosures for Ms. Duckworth. (Reply Supp. Pl.'s Third Mot. Limine at 8.) To the extent that Defendant offers to have his expert prepare a new subdivision plan, Plaintiff notes that the plan would still involve Defendant's speculative plans and would be excludable. (Id. at 10-11.) Plaintiff contends that "[Defendant] and his experts should not be allowed to recreate, based on this Court's evidentiary rulings, what existed only in [Defendant's] mind prior to the taking, and it would [be] prejudicial to allow [Defendant] or any of his witnesses to introduce new opinions based on revised maps and data on the eve of trial." (Id. at 11.)
B. Discussion
Federal law, not state law, governs just compensation in a federal condemnation action. United States v. Miller, 317 U.S. 369, 379-80, 63 S.Ct. 276, 87 L.Ed. 336 (1943). Defendants' reliance on cases interpreting Georgia state law consequently is misplaced, and those cases cited by Defendants are neither controlling nor persuasive. It is abundantly clear that an award of just compensation in a federal condemnation action includes "only that value which is capable of transfer from owner to owner and thus of exchange for some equivalent," and "[i]ts measure is the amount of that equivalent." Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). "[F]air market value does not include the special value of property to the owner arising from its adaptability to his particular use." United States v. 564.54 Acres of Land, 441 U.S. 506, 511, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979). "[N]ontransferable values arising from the owner's unique need for the property are not compensable." Id. at 514, 99 S.Ct. 1854. Frustration of the owner's plans is not compensable in a condemnation case. United States ex rel. Tenn. Valley Auth. v. Easement & Right of Way 100 Feet Wide Over Certain Lands in Gibson Cty., Tenn., 447 F.2d 1317, 1320 (6th Cir. 1971). Generally, a property's "best use is considered at the time of taking and not on *1367 the basis of some subsequent development." United States v. Improved Premises Located at N.W. Corner of Irving Place and Sixteenth St. 359 F.Supp. 528, 533-34 (S.D.N.Y. Apr. 10, 1973). Where a landowner has taken no affirmative steps before the date of taking to subdivide the condemned property, it is improper to attempt to value the property as subdivided residential land. See United States ex rel. Tenn. Valley Auth. v. Easement and Right of Way Over Certain Land in Catoosa Cty., Ga., 123 F.Supp. 886, 888 (N.D. Ga. July 28, 1954) (rejecting an attempt to value property "on a front foot basis and not based upon the basis of its fair market value if sold as one entire tract" where "[t]he property in question has never been subdivided even on paper"); see also 6.09 Acres of Land, 140 F.Supp.3d at 1250 ("[F]ederal courts have often been reluctant to allow the lot method to be used to establish market value where the land has not actually been subdivided, and there has been little or no material preparation or development, rendering projections on subdivision and future sales more speculative, and sufficient sales of comparable undeveloped land exist." (collecting cases) ).
Courts also generally do not permit juries to consider plats that are prepared after the date of taking. One court observed:
Crotsley also attempted to admit a subdivision plan which divided his land into building lots. The plot plan was not admitted into evidence although Crotsley was allowed to testify as to the price he thought the property would sell for as a site for recreational land development. The court exercised its discretion to exclude the plan because it was drawn up in 1961, was never recorded, and was speculative in nature inasmuch as the landowner, after the expiration of a number of years, had only staked out the outer perimeter of the subdivision and cleared very little of the land. With such a subdivision plan in front of them upon which a number of building lots have been drawn to perfection each of which could have theoretically been sold at a profit to the landowner, it would be very easy for the jury to improperly attempt to determine the number of lots the land would produce and estimate a price for each lot in determining the fair market value of the entire tract. The jury's function was to determine what a purchaser would be willing to pay for the land in its present condition, not speculate as to what could have been done with the land in the future. The plot plan would have impeded rather than aided the jury in that function. Accordingly, in the court's considered opinion, the plot plan was properly excluded.
United States v. 633.07 Acres of Land, More or Less, in Huntingdon Cty., Commonwealth of Pa., 362 F.Supp. 451, 453-54 (M.D. Pa. July 31, 1973). Another court stated:
The jury are to value the tract of land and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. A speculator or investor, in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled, and the court should have drawn the attention of the jury to it, so as to have left no room for uncertainty on their part. They should have been *1368 told that they had nothing to do with the subdivision of this tract, the price of the lots, or the probability of their sale; but that they were to ascertain the fair selling value of the land before and after the entry by the railroad company, in order to determine the actual damage done to its owner.
United States v. 3.544 Acres of Land, More or Less, Situate in Philadelphia Cty., Pa., 147 F.2d 596, 598 (3d Cir. 1945) (internal quotation marks omitted).
Plaintiff also correctly notes that the contemplated subdivision's plans anticipate building the subdivision, in part, on land that Defendant does not own, and that the required land has not been assembled. Under those circumstances, Plaintiff is correct in arguing that "any conceptual plan to develop a subdivision on land that [Defendant] did not own as of the date of taking would be speculative and not relevant to the value of [Defendant's] property on the date of taking." (Br. Supp. Pl.'s Third Mot. Limine at 11.) Plaintiff also accurately points out that such evidence "would be contrary to the actual actions of [Defendant] and Ms. Duckworth; each affirmatively chose, before and after the date of taking, to keep their properties titled in separate names." (Id. ) Indeed, even though Defendant contends that he owns his property and residential lots in another subdivision, Defendant owned these properties for years and took no steps prior to the date of the taking to develop the properties into a subdivision. Instead, Defendant used his 368-acre farm tract for farming and did not build on the residential lots. Defendant did not attempt to hire a surveyor or professional engineer to develop a subdivision plan until after the date of taking. Those actions indicate that any plans that Defendant may have had to develop a subdivision were simply speculative as of the date of the taking. As such, evidence concerning Defendant's purported post-taking plans to develop the subject property into subdivided lots is inadmissible.
The Court will not permit Defendant to present a new subdivision plan or new opinions from his expert witness concerning development of the subject property into a subdivision at this late date. As an initial matter, this evidence is inadmissible because it simply relates to Defendant's speculative plans for the subject property as of the date of taking. In any event, the evidence would be prejudicial to Plaintiff at this late date, as the case is due to proceed to trial in a matter of days and Plaintiff will not have a sufficient opportunity to conduct discovery concerning this evidence.
To the extent that Defendant seeks to offer lay opinion testimony from Ms. Duckworth concerning property valuations, Ms. Duckworth may not opine as to the value of the subject property because she has no ownership interest in it. Ms. Duckworth also may not testify as an expert because Defendant did not make the required expert witness disclosures for her.[12]
In sum, the Court agrees with Plaintiff that evidence concerning plans to develop the subject property into subdivided lots prepared after the date of taking, as well as actions taken post-taking in furtherance of those plans, is inadmissible. The Court therefore grants Plaintiff's Third Motion in Limine, and excludes this evidence, as well as Defendant's Exhibits 5, 9, 41, 43, and 44. The Court notes that it does not intend to preclude Mr. Lutjens from testifying concerning flood zones or from presenting flood maps; the Court simply is prohibiting Mr. Lutjens from testifying as to post-taking plans to develop the subject property *1369 into subdivided lots and from presenting his post-taking subdivision plan.
IV. Plaintiff's Fourth Motion in Limine
A. The Parties' Positions
1. Plaintiff's Motion
Plaintiff requests that the Court exclude proposed expert testimony or other improper testimony from Defendant. (Pl.'s Fourth Mot. Limine at 1-2; Br. Supp. Pl.'s Fourth Mot. Limine (Docket Entry No. 68-1) at 1.) Plaintiff contends that the Court should exclude expert testimony from Defendant relating to civil engineering and construction, noting that Defendant failed to list that proposed testimony in his expert disclosures, as required by Federal Rule of Civil Procedure 26(a)(2)(D). (Br. Supp. Pl.'s Fourth Mot. Limine at 3-5.) Plaintiff acknowledges that "Defendant may offer opinion testimony regarding the subject property as its landowner and its value based upon his experience as such-improvements, uses, and so forth," but argues that the Court should not permit Defendant "to testify as an expert engineer, real estate developer, appraiser, or the like," or "to offer expert testimony akin to that of his properly identified and disclosed experts: the ability to construct a residential development on the subject property; comparable sales analysis; flood zone development; appraisal methodology; trend analysis; and paired data analysis." (Id. at 4-5.) Plaintiff further argues that the Court should exclude Defendant's testimony based on his subjective personal value of the subject property, including testimony as to frustration of plans. (Id. at 5-6.) Additionally, Plaintiff contends that the Court should exclude valuation testimony offered by Defendant concerning valuation of the subject property based on subdivided residential land values, as such testimony is speculative. (Id. at 6-11.) Finally, Plaintiff argues that Defendant cannot testify concerning inadmissible hearsay, and contends that the Court should prohibit Defendant from offering "testimony regarding his communications with, for example, prospective buyers and the like, past or present, for valuations purposes." (Id. at 11.)
2. Defendant's Response[13]
Defendant argues that he is not an expert witness, and that he instead is a lay witness who will testify under Rule 701. (Br. Resp. Pl.'s Fourth Mot. Limine (Docket Entry No. 2) at 2.) According to Defendant, he is not precluded from testifying as a lay witness simply because he "happens to have an engineering degree from Georgia Tech," he "has been in the farming and residential real estate business in Gordon County for many years," he "formerly worked in the building code department in the City of Calhoun for a number of years," and he "is intimately familiar with his land." (Id. ) Defendant states that:
[Defendant] will testify to his education, his occupations over the years, his general knowledge and personal experience arising from his involvement with real estate matters for many years (including his purchase, development, and sale of various parcels of real estate), his pre-existing plan for residential development of the subject property, his actual purchase and sale of residential lots adjoining the subject property (including but *1370 not limited to lots owned jointly with [Ms. Duckworth] ), his actual sale of a residential lot within the subject property, and his existing ownership of residential lots which are in fact a part of the subject property, together with testimony reasonably related to these matters. Further, [Defendant] will testify that his property was suitable for residential use, that his plans were practical and probable, that there were no barriers to immediate implementation of his plan (including zoning) until [Plaintiff] took the property, and that nothing prevented sale of residential lots at any time prior to the taking.
(Id. at 2-3.) Defendant contends that this testimony is lay witness testimony under Rule 701. (Id. at 3-4.)
Defendant alternatively argues that, even if his testimony is expert testimony, Rule 26(a)(2)(C)'s disclosure requirements are considerably less extensive than Rule 26(a)(2)(B)'s requirements. (Br. Resp. Pl.'s Fourth Mot. Limine at 4.) According to Defendant, "Plaintiff had full opportunity to conduct discovery in this case, and took the deposition of [Defendant]; [Defendant's] disclosures were adequate to put [Plaintiff] on notice of facts and opinions to which [Defendant] is expected to testify." (Id. )
Finally, Defendant argues that even if some of the testimony he plans to offer contains expert opinions, Plaintiff waived any objections to that testimony by failing to file a Daubert motion. (Br. Resp. Pl.'s Fourth Mot. Limine at 4-5.)
3. Plaintiff's Reply
In its reply, Plaintiff notes that the opinions that Defendant seeks to offer are not really lay opinions, but are instead expert opinions that Defendant failed to disclose. (Reply Supp. Pl.'s Fourth Mot. Limine (Docket Entry No. 82) at 1-4.) Plaintiff notes that this case is distinguishable from 6.09 Acres, where landowners were allowed to testify concerning the value of their land, as "the defendants in that case were in the business of and had successfully developed a number of large-scale, residential subdivisions and their attorneys had made Rule 26(a)(2)(C) expert disclosures relating to their opinions." (Id. at 3.) Plaintiff points out that Defendant "does not develop large scale residential subdivisions, and his attorney did not make any expert disclosures relating to his opinions." (Id. (citation omitted).) Plaintiff notes that the court in 6.09 Acres recognized a material distinction under Rule 701 between expert and lay testimony, and held that, if a landowner's testimony about value was based on technical or specialized knowledge, it would cross into expert testimony and would not be admissible under Rule 701. (Id. at 3-4.) Plaintiff contends that it "seeks only to limit [Defendant's] testimony to lay testimony and prevent the scope of [Defendant's] testimony from crossing into inadmissible expert testimony." (Id. at 4.)
Plaintiff also argues that Defendant's contention that Plaintiff waived objections to Defendant's opinion testimony by failing to file a Daubert motion is erroneous. (Reply Supp. Pl.'s Fourth Mot. Limine at 5.) Plaintiff points out that "[t]he filing of a Daubert motion presumes that an expert's opinions have been disclosed," that Defendant failed to make expert disclosures, and that Defendant's "failure to do so obviated the need for any Daubert motion." (Id. ) Plaintiff argues that "Defendant's waiver argument reflects a misunderstanding of his discovery obligations under the Federal Rules of Civil Procedure." (Id. ) Plaintiff also contends that, "as a practical matter, it would not have been possible for Plaintiff to file a Daubert motion that challenged [Defendant's] qualifications or the reliability of his undisclosed opinions for *1371 the obvious reason that they were not disclosed prior to the deadline for filing a Daubert motion in this case." (Id. ) Plaintiff argues that 6.09 Acres is distinguishable from this action because "in that case, the Defendants did make some expert disclosures, and the government challenged the sufficiency of those disclosures-not the failure to make any disclosures at all." (Id. at 5-6.)
B. Discussion
Federal Rule of Civil Procedure 26(a)(2) requires that a party seeking to present expert testimony make certain disclosures. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2)(D) provides, in relevant part: "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Federal Rule of Civil Procedure 37(c)(1) provides:
If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).
Fed. R. Civ. P. 37(c)(1). To the extent that Defendant failed to disclose his own proposed expert testimony relating to civil engineering and construction or expert appraisal or valuation, the Court will exclude this testimony. The testimony to be excluded includes: the ability to construct a residential development on the property; comparable sales analysis; flood zone development; appraisal methodology; trend analysis; and paired data analysis.
Defendant attempts to paint his testimony as lay testimony based on his own specialized knowledge and experience. Defendant's attempt to rely on 6.09 Acres for this point is not well taken. In that case, the court recognized that "Rule 702 does not always apply to opinion testimony by a witness as it relates to the value of his own land or property," and that such testimony might qualify as lay opinion testimony under Rule 701. 6.09 Acres, 140 F.Supp.3d at 1240-41. The court explained:
Rule 701 does not distinguish between expert and lay witnesses, but rather between expert and lay testimony. Thus, within the testimony of a single witness, one opinion may fall under Rule 701 and another under Rule 702. And distinguishing between lay and expert opinion testimony in this respect is critical. In contrast to expert opinion testimony, lay opinion testimony admissible under Rule 701 is not subject to the gatekeeping requirements of Daubert, or to expert disclosure requirements under rules of court. This is so because [l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events. However, courts must be vigilant to ensure that the gatekeeping requirements of Rule 702 are not evaded through the simple expedient of proffering an expert in lay witness clothing.
Accordingly, that Rule 701 may authorize a witness to give a lay opinion on the value of his property does not mean that *1372 a landowner has carte blance to espouse any opinion he pleases on the value of his land, free from the constraints of Rule 702 and Daubert. If an owner's testimony on value is based not upon commonly understood considerations of worth flowing from his perceptions and knowledge of his property but instead upon technical or specialized knowledge more broadly, it crosses into expert testimony for purposes of Rule 702 and cannot be admitted under Rule 701(c).
140 F.Supp.3d at 1241-42 (emphasis and alteration in original) (internal quotation marks and citations omitted). It is clear that Defendant's proposed testimony would cross the line from being admissible lay opinion testimony about valuation into expert testimony territory. Defendant cannot evade his disclosure requirements by attempting to disguise as lay testimony what is really expert testimony.
Further, 6.09 Acres does not stand for the proposition that no expert disclosure requirements are required when a landowner offers expert testimony. The landowners in that case made expert disclosures, and the Government challenged the sufficiency of the disclosures. 140 F.Supp.3d at 1244. The court noted that, insofar as the landowners' opinions "might qualify as lay opinion under [ Rule] 701, Defendants need not provide a Rule 26(a)(2) expert disclosure at all." Id. (citations omitted). The court further stated, "even if their testimony encompasses expert opinions, disclosure under Rule 26(a)(2)(C) for non-retained experts is considerably less extensive than the report required by Rule 26(a)(2)(B) for retained experts, and [c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Id. (alteration in original) (internal quotation marks and citations omitted). The court found that the disclosures the defendants provided "were adequate to put the Government on notice of the facts and opinions upon which [the defendants] were expected to testify." Id. In contrast, Defendant made no Rule 26(a)(2)(C) disclosures at all here, and he certainly did not put the Government on notice of the facts and opinions upon which he expected to testify sufficiently early in the litigation to allow the Government to test those facts and opinions. As such, the opinions are subject to exclusion.
Plaintiff also is correct in noting that Defendant may not testify based on his subjective personal value of the subject property. "It is the general rule that an owner, because of his ownership, is presumed to have special knowledge of the property and may testify as to its value." United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966). "But the owner's qualification to testify does not change the market value concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely upon speculation." Id. ; see also 6.09 Acres, 140 F.Supp.3d at 1243 ("[l]f a landowner's testimony reveals that his opinion of value rests upon a legally invalid foundation, such as the price upon which he personally would insist to sell the land, his opinion would lack any probative value." (citations omitted) ). Further, frustration of plans is generally not compensable. Easement & Right of Way 100 Feet Wide Over Certain Lands in Gibson Cty., Tenn., 447 F.2d at 1320. Under those circumstances, Defendant may not testify concerning potential plans for development and holding the subject property as an investment for an undetermined future use. Moreover, to the extent that Defendant is seeking to testify concerning valuation of the subject property under the lot method or based on the plans to develop a *1373 subdivision, that testimony is speculative and is inadmissible for the same reasons set forth supra Part III. At the time of the taking, much of the subject property was undeveloped land that Defendant was farming, Defendant had no written plan to develop the subject property as a subdivision, and Defendant had not taken steps to develop the subject property as a subdivision. To the extent that Defendant intends to offer testimony concerning other persons' valuations of the subject property or his communications with prospective buyers for valuation purposes, this testimony is inadmissible hearsay. See Cunningham v. Masterwear Corp., 569 F.3d 673, 675-76 (7th Cir. 2009) ("The testimony about what the real estate agent thought the property worth and what prospective buyers had told the agent would have been inadmissible hearsay.").
In sum, the Court grants Plaintiff's Fourth Motion in Limine. The Court precludes Defendant from attempting to testify as an expert engineer, real estate developer, appraiser, from testifying concerning the ability to construct a residential development on the subject property, and from offering testimony concerning comparable sales analysis, flood zone development, appraisal methodology, trend analysis, and paired data analysis. Defendant also may not offer testimony based on his subjective personal value of the subject property, including testimony as to frustration of plans, and he may not offer testimony concerning valuation of the subject property based on subdivided residential land values. Defendant also may not testify concerning inadmissible hearsay.
V. Plaintiff's Fifth Motion in Limine
A. Parties' Positions
1. Plaintiff's Motion
In Plaintiff's Fifth Motion in Limine, Plaintiff seeks to exclude various testimony and evidence at trial. (Pl.'s Fifth Mot. Limine at 1.) First, Plaintiff seeks to exclude evidence relating to the amount of the Government's deposit, arguing that "the amount of the Government's deposit in a just compensation hearing is not admissible as proof of the value of property rights acquired." (Br. Supp. Pl.'s Fifth Mot. Limine (Docket Entry No. 69-1) at 2.) Plaintiff notes that the amount of this "deposit is merely an estimate of just compensation required by the Declaration of Takings Act to place the Government in immediate possession of the property rights acquired; the deposit is not a final settlement of the amount due." (Id. at 3-4.)
Plaintiff also seeks to exclude evidence related to negotiations and settlement offers between Plaintiff and Defendant. (Br. Supp. Pl.'s Fifth Mot. Limine at 4-6.) According to Plaintiff, evidence of pre-condemnation negotiation efforts, including settlement offers, is not admissible as evidence of value in a condemnation proceeding. (Id. at 5.) Plaintiff contends that "evidence related to compromise negotiations between Plaintiff and Defendant after the November 17, 2016, date of taking, including any settlement offer to Defendant from Plaintiff, is inadmissible and should be excluded from trial pursuant to Federal Rule of Evidence 408." (Id. at 5-6.)
Plaintiff also seeks to exclude evidence related to its acquisition of the Whitmore Property (the "Whitmore Transaction"). (Br. Supp. Pl.'s Fifth Mot. Limine at 6-7.) According to Plaintiff, this information is irrelevant because the amounts paid in the Whitmore Transaction "would not constitute evidence of the value of the property in this matter because it involved a transaction whereby [Plaintiff] acquired property under the power and prospect of eminent domain." (Id. at 6.) Plaintiff also argues that the presence of a transmission line on the Whitmore property has no relevance *1374 to the measure of just compensation for Defendant's property. (Id. at 6-7.)
Plaintiff further seeks to exclude evidence relating to a May 4, 2007, purchase agreement for the subject property, arguing that this offer is too remote in time to be relevant for just compensation. (Br. Supp. Pl.'s Fifth Mot. Limine at 7-8.) Plaintiff points out that the relevant date for valuation of the subject property is of the date of taking, November 17, 2016. (Id. )
Finally, Plaintiff seeks to preclude expert testimony from Ms. Duckworth concerning the valuation of the subject property. (Br. Supp. Pl.'s Fifth Mot. Limine at 8-10.) Plaintiff points out that Ms. Duckworth is not the landowner of the subject property and that Defendant failed to make Rule 26(a)(2) disclosures for her. (Id. )
2. Defendant's Response[14]
Defendant states that he does not intend to offer evidence or argument at trial concerning: (1) the amount of the Government's deposit; (2) settlement negotiations; or (3) the Whitmore residential lot transaction. (Resp. Pl.'s Fifth Mot. Limine (Docket Entry No. 74) at 2; Br. Resp. Pl.'s Fifth Mot. Limine (Docket Entry No. 74-1) at 2.) With respect to the May 4, 2017, Purchase Agreement, Defendant notes that, although he "does not plan to use this evidence at trial, the evidence may be a factor in [his] knowledge and experience for forming his opinions as to the value of [the subject] property for its highest and best use." (Resp. Pl.'s Fifth Mot. Limine at 2-3; see also Br. Supp. Pl.'s Fifth Mot. Limine at 2-3 ("Although [Defendant] does not plan at this time to use this evidence at trial, the evidence is certainly a factor in [Defendant's] knowledge and experience for forming his opinions as to the value of [the subject] property for its highest and best use.").) Defendant argues that, as the owner of the subject property, he is competent to testify as to its value. (Br. Supp. Pl.'s Fifth Mot. Limine at 3.) Defendant contends that he "is a qualified witness to testify [as] to all matters of which he has personal knowledge and experience which are the foundation of such knowledge," and that "[t]his prior agreement is evidence of past value, which has a bearing on present value." (Id. ) Defendant argues that he "is competent to testify to the value and highest and best use[ ] of his land, and how his opinions were formed." (Id. )
As for Ms. Duckworth's expert testimony, Defendant argues that Ms. Duckworth is a lay witness, not an expert witness, and that she may "testify to the value[ ] of residential lots, based on her own personal experiences." (Resp. Pl.'s Fifth Mot. Limine at 3; see also Br. Resp. Pl.'s Fifth Mot. Limine at 3-4 (arguing that Ms. Duckworth is a lay witness and is permitted to testify concerning the values of residential lots based on her personal experiences).) According to Defendant:
[Ms.] Duckworth is a lay witness in regard to her land, in the same manner that [Defendant] is a lay witness in regard to his land, thus entitled to testify in the same manner to values and lay matters known by her in regard to her property. Both of these family witnesses also jointly own a number of residential lots immediately adjacent to the subject property. Both of these witnesses plan to testify to their pre-existing plan for enlargement of the residential subdivision which already exists, not in the *1375 nature of expert testimony, but simply in regard to the sale of tracts for residential purposes. These witnesses will not testify as to damages based on the "lot method." Federal Rule of Evidence 701 does not require a lay witness to be the owner of the property. Yet, in this situation, where [Ms.] Duckworth is effectively a partner in the business anyway, her testimony is authorized.
(Id. at 4.) Defendant contends that "Ms. Duckworth is a non-expert witness with first-hand knowledge of the real estate matters at issue in this case." (Id. at 5.) Defendant notes that Ms. Duckworth appeared for her deposition, but Plaintiff decided not to take Ms. Duckworth's deposition even after Ms. Duckworth waited most of the day. According to Defendant, "Plaintiff had ample opportunity to elicit her testimony." (Id. )
3. Plaintiff's Reply
Plaintiff argues that the Court should grant its Fifth Motion in Limine as to the amount of the Government's deposit for the reasons stated in Plaintiff's initial brief and because Defendant does not oppose this portion of the Motion. (Reply Supp. Pl.'s Fifth Mot. Limine (Docket Entry No. 77) at 1.) Plaintiff also contends that the Court should exclude evidence relating to negotiations and settlement offers for the reasons stated in Plaintiff's initial brief and because Defendant does not oppose this portion of the Motion. (Id. at 1-2.) Plaintiff further argues that the Court should exclude evidence related to the Whitmore Transaction for the reasons stated in Plaintiff's initial brief and because Defendant does not oppose this portion of the Motion. (Id. at 2.)
With respect to the May 4, 2007, Purchase Agreement, Plaintiff argues that the Court should exclude this evidence because "there was no sale that closed that might be evidence of market value at that time, and any information provided to Defendant as a reason for the failure to close would be hearsay." (Reply Supp. Pl.'s Fifth Mot. Limine at 2.) Plaintiff also notes that Defendant does not explain how the economic downturn impacted the proposed transaction, stating that "the unexplained economic downturn could mean that the purchaser backed out of the deal because the purchase proved not to be financially feasible, because the bank's appraisal of the land could not support the proposed price, because the lender restricted its lending requirements, or any other of a myriad of reasons." (Id. at 3.) Plaintiff observes that "any explanation provided to [Defendant] as reasons why the closing did not occur in 2007 would be inadmissible hearsay relating to a ten-year old, unconsummated transaction that does not indicate the value of his farm, ten years later, at the time of taking." (Id. )
With respect to expert testimony from Ms. Duckworth, Plaintiff argues that Ms. Duckworth is not the owner of the subject property and Defendant made no Rule 26(a)(2) disclosures for her. (Reply Supp. Pl.'s Fifth Mot. Limine at 3.) Plaintiff notes:
Defendant's initial argument that Ms. Duckworth is a lay witness who should be allowed to render opinions relating to her land misses the point. Ms. Duckworth's personal opinion regarding the value of her land (which is not the subject property in this condemnation) is not relevant to the market value of [Defendant's] land which is the subject property in this condemnation.
(Id. (emphasis in original) (citation omitted).) With respect to Defendant's argument that Ms. Duckworth is effectively a partner in Defendant's business, Plaintiff notes that this argument
*1376 is not supported by the record and does not retroactively change uncontroverted facts that [Defendant] (i) affirmatively elected to title the subject property in only his name, (ii) did not characterize the operation of his wholly-owned land as a partnership with his daughter for purposes of reporting income on his 2016 tax returns, and (iii) has failed to point to any document that would put the public on notice that the ownership or operation of his farm is in an "effective partnership."
(Id. at 4.) Plaintiff contends that "[t]he argument also directly contradicts Defendant's repeated representations to this Court, in pleadings, stipulations and other papers, that [Defendant] wholly owns the subject property," including Stipulation ¶ 1 in the Amended Pretrial Order. (Id. )
With respect to Defendant's "suggestion that Ms. Duckworth should be allowed to offer opinion testimony based on her purported specialized knowledge as an owner, developer, and seller of other property in Gordon County," Plaintiff notes that "Defendant made no Rule 26(a)(2) expert disclosures for Ms. Duckworth, and any proffered opinion of Ms. Duckworth would be subject to exclusion as a Rule 37(c)(1) sanction for his failure to do so." (Reply Supp. Pl.'s Fifth Mot. Limine at 5.)
B. Discussion
The Court grants the portion of Plaintiff's Fifth Motion in Limine relating to the amount of the Government's deposit. First, Defendant does not oppose this portion of the Motion. Second, just compensation is a matter for the trier of fact to determine, and the amount of the deposit is simply an estimate of the amount due paid to give the Government immediate possession of the property. Miller, 317 U.S. at 381, 63 S.Ct. 276 ("The payment is of estimated compensation, it is intended as a provisional and not a final settlement with the owner; it is a payment on account of compensation and not a final settlement of the amount due." (internal quotation marks omitted) ); Instructions to Comm'rs, 61 F.R.D. at 520 ("The purpose of such deposit is to give the Government immediate possession of the property and to relief it of the burden of paying interest on the amount deposited, and also to give the property owner the immediate use of the money. The amount deposited is not to be construed as either an admission of value by the Government nor a limit of value as to the landowner. The deposit of estimated just compensation is not evidence of value, has no bearing whatever on value, and will be disregarded by you in reaching your decision as to the value of the property taken. You are required to fix your value without any reference at all to the amount deposited." (footnote omitted) ); United States v. 342.81 Acres of Land, More or Less, in Hall Cty., Ga., 134 F.Supp. 430, 432 (N.D. Ga. Aug. 6, 1955) ("The deposit is merely an estimate and the amount finally determined to be just compensation may be more or less than the amount of the deposit." (citation omitted) ).
The Court grants the portion of Plaintiff's Fifth Motion in Limine relating to evidence of settlement offers and negotiations. First, Defendant does not oppose this portion of the Motion. Second, evidence of pre-condemnation settlement offers and negotiations is inadmissible as evidence of value in this condemnation proceeding. Wash. Metro. Area Transit Auth. v. One Parcel of Land in Montgomery Cty., Md., 548 F.2d 1130, 1131 (4th Cir. 1977) (per curiam) ("We hold that a landowner who rejects a pre-condemnation offer *1377 ... may not introduce that offer as proof of value when the government condemns the property."); Wash. Metro. Area Transit Auth. v. One Parcel of Land in Prince George's Cty., Md., 342 F.Supp.2d 378, 380-82 (D. Md. Nov. 1, 2004) (precluding admission of a pre-condemnation settlement offer itself); Instructions to Comm'rs, 61 F.R.D. at 517 ("It is not permissible for a landowner to state or prove what he has been offered for the property involved, nor for him to prove an unaccepted offer to purchase made by one not a party to the suit." (footnote omitted) ). Compromise negotiations and settlement offers after the date of taking would be inadmissible under Federal Rule of Evidence 408. Fed. R. Evid. 408.
The Court grants the portion of Plaintiff's Fifth Motion in Limine relating to the Whitmore Transaction. First, Defendant does not oppose this portion of the Motion. Second, amounts paid in the Whitmore Transaction would not constitute evidence of the value of the property at issue in this case, because the Whitmore Transaction involved an acquisition of property under eminent domain. See United States v. 0.59 Acres of Land, 109 F.3d 1493, 1498 (9th Cir. 1997) (noting that "[t]he price paid by the condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land," unless "(1) the sale is voluntary or (2) the fact that parties were condemnor and condemnee was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings" (alteration in original) (internal quotation marks and citations omitted) ); United States v. 25.02 Acres of Land, More or Less, in Douglas Cty., Colo., 495 F.2d 1398, 1403 (10th Cir. 1974) ("Courts have recognized that forced sales-in condemnation proceedings-often involve compulsion, coercion or compromise and that a condemning party might be willing to give more than the property is worth, and the owner might be willing to take less than it is worth rather than undergo a lawsuit."); Instructions to Comm'rs, 61 F.R.D. at 518 ("While the prices paid in sales of similar property between private parties are admissible, the price the Government has paid for other property is not admissible in evidence and is incompetent to prove the market value of land under condemnation. Such sales are not a fair criterion of value for the reason that they are not free sales but are in the nature of a compromise to avoid a law-suit. Likewise, what the Government has offered for the property in condemnation or has offered for other property is not admissible in evidence and should not be considered in making your determination of just compensation for the property taken." (footnotes omitted) ). In any event, Defendant may not claim damages based on injury to other property owners. See Campbell v. United States, 266 U.S. 368, 372, 45 S.Ct. 115, 69 L.Ed. 328 (1924) ("[T]he just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking"); United States ex rel. Tenn. Valley Auth. v. Stewart, 429 F.Supp. 658, 660-61 (E.D. Tenn. July 19, 1976) ("In any condemnation, incidental injury may be caused to adjoining property owners which must be suffered without remedy." (citation omitted) );
*1378 United States ex rel. Tenn. Valley Auth. v. Easement and Right-of-Way Over 1.0 Acre of Land, 248 F.Supp. 702, 703-04 (W.D. Tenn. Dec. 23, 1965) ("[T]he owner cannot claim such damage to the extent that it is based on that part of the line not on its property.").
The Court also grants the portion of Plaintiff's Fifth Motion in Limine relating to the May 4, 2007, Purchase Agreement. The diminution of value as a result of the taking and the highest and best use of the subject property must be determined as of November 17, 2016, the date of taking. United States v. Reynolds, 397 U.S. 14, 16, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970) ("[T]he owner is entitled to the fair market value of the property at the time of the taking." (footnotes omitted) ). The May 4, 2007, Purchase Agreement is simply too remote in time to have relevance to the fair market value of the subject property as of the date of taking. Further, as Plaintiff points out, Defendant's testimony concerning why the 2007 deal did not close would be inadmissible hearsay to the extent that Defendant seeks to testify about what others told him.
Finally, the Court grants the portion of Plaintiff's Fifth Motion in Limine relating to Ms. Duckworth's expert testimony for the reasons set forth supra Part IV. Defendant did not make expert disclosures for Ms. Duckworth, and, as a non-landowner, she may not otherwise testify as to her opinion concerning the value of the subject property. She may testify as to the value of her property; however, she owns no interest in the subject property, which entirely belongs to Defendant. Any attempt by Defendant to characterize Ms. Duckworth as his business partner in developing the land jointly is contrary to the evidence in the record and to Defendant's previous representations to the Court that he wholly owns the subject property, and is unavailing.
In sum, the Court grants Plaintiff's Fifth Motion in Limine. The Court precludes Defendant from offering evidence and argument at trial concerning: (1) the amount of the Government's deposit; (2) negotiations and settlement offers; (3) the Whitmore Transaction; (4) the May 4, 2007, Purchase Agreement; and (5) testimony from Ms. Duckworth concerning valuation.
VI. Conclusion
ACCORDINGLY, the Court GRANTS Plaintiff's First Motion in Limine [64], and excludes evidence and argument relating to an unaccepted oral offer to purchase part of Ms. Duckworth's property, as well as other offers relied upon by Defendant or his witnesses. The Court GRANTS Plaintiff's Second Motion in Limine [65], and excludes evidence and testimony related to damages to non-unity of title properties, including Defendant's Exhibit 11.
The Court GRANTS Plaintiff's Third Motion in Limine [66], and precludes Defendant from introducing testimony and evidence at trial concerning Defendant's post-taking plan to develop the subject property into subdivided lots and actions taken in furtherance of those plans, including Defendant's Exhibits 5, 9, 41, 43, and 44. The Court notes that it does not intend to preclude Defendant's expert from offering testimony and evidence concerning flood zones to the extent that this testimony and evidence is separate from the expert's testimony and evidence relating to a plan to develop the subject property into subdivided lots.
The Court GRANTS Plaintiff's Fourth Motion in Limine [68]. The Court precludes Defendant from attempting to testify as an expert engineer, real estate developer, appraiser, from testifying concerning the ability to construct a residential development on the subject property, and from offering testimony concerning comparable *1379 sales analysis, flood zone development, appraisal methodology, trend analysis, and paired data analysis. Defendant also may not offer testimony based on his subjective personal value of the subject property, including testimony as to frustration of plans, and he may not offer testimony concerning valuation of the subject property based on subdivided residential land values. Defendant also may not testify concerning inadmissible hearsay.
Finally, the Court GRANTS Plaintiff's Fifth Motion in Limine [69]. The Court precludes Defendant from offering evidence and argument at trial concerning: (1) the amount of the Government's deposit; (2) negotiations and settlement offers; (3) the Whitmore Transaction; (4) the May 4, 2007, Purchase Agreement; and (5) testimony from Ms. Duckworth concerning valuation.
IT IS SO ORDERED, this the 3rd day of May, 2018.

The Court's preference is for Parties to combine all Motions in Limine into a single filing that addresses all matters and issues, rather than filing multiple Motions. The Court directs counsel to adhere to the Court's preference for all future cases.
The Court also observes that Defendant James W. Hobgood ("Defendant") filed his own Motion in Limine. (Def.'s Mot. Limine (Docket Entry No. 67).) The Court addresses that Motion in a separate Order.

Defendant filed both a response and a brief in response to Plaintiff's First Motion in Limine. (Resp. Pl.'s First Mot. Limine (Docket Entry No. 70); Br. Resp. Pl.'s First Mot. Limine (Docket Entry No. 70-1).) The brief contains the same arguments as set forth in the response and provides more detail, so the Court focuses on summarizing the brief in this Order. The Court also notes that, when responding to future motions, it is not necessary for Defendant to file a separate "response" and a separate "brief in response." One or the other will be sufficient.

Defendant does not squarely address this argument, but instead simply argues that Defendant and Ms. Duckworth both have personal knowledge of the matter. This is not enough to meet Defendant's burden to show that the offer itself is not hearsay or that the offer qualifies for a hearsay exception.

Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

The Court notes that it does not take issue with Defendant's contention that an owner of property generally is competent to testify as to its value. Defendant, however, cites no applicable authority to show that it is appropriate to expand this rule to allow an owner of property (or an owner of adjacent property) to testify as to hearsay offers, and the Court itself is not aware of any such authority. The Court discusses whether Ms. Duckworth may offer opinion testimony concerning the value of the subject property infra.

Defendant filed both a response and a brief in response to Plaintiff's Second Motion in Limine. (Resp. Pl.'s Second Mot. Limine (Docket Entry No. 71); Br. Resp. Pl.'s Second Mot. Limine (Docket Entry No. 71-1).) The brief contains the same arguments as set forth in the response and provides more detail, and the Court therefore focuses on the brief in this Order.

The evidence is especially irrelevant, given Defendant's stipulation in the pretrial order. Defendant stipulated that:
16. [Defendant] previously claimed compensation was due to him as a result of consequential damages to the contiguous residential lots which are shown in purple and orange on the Aerial Map (Docket Entry No. 24). [Defendant] owns a fifty percent (50%) fee interest in these purple and orange parcels (Gordon County Tax Map Parcel 33.108, Parcel 33.132, Parcel 33.134, and Parcel 33.142). The Court, in a pretrial ruling, granted judgment in favor of TVA, disallowing a claim for compensation for adverse effects relating to these parcels (Docket Entry No. 30 at 17-18). [Defendant] therefore will not assert claims or seek damages to the purple lots and the orange lot at trial, but [Defendant] otherwise preserves all rights to appeal the Court's ruling on this issue.
(Am. Pretrial Order (Docket Entry No. 63-1) at 19.) Given this stipulation, it is questionable how evidence concerning how evidence of plans for development of, and damages to, non-unity of title properties could possibly be relevant.

The Court addresses this issue in more detail infra.

The Court addresses this issue in more detail infra.

"Defendant's Exhibit 9 is a May 1, 2017 deed under which [Defendant] granted an access easement across his land to Ms. Duckworth to provide access to her land." (Br. Supp. Pl.'s Third Mot. Limine at 5 n.2.) Plaintiff argues that this deed, which Defendant's counsel prepared, "has no relevance to the value of the subject property immediately before or immediately after the date of taking." (Id. )

Defendant filed both a response and a brief in response to Plaintiff's Third Motion in Limine. (Resp. Pl.'s Third Mot. Limine (Docket Entry No. 72); Br. Resp. Pl.'s Third Mot. Limine (Docket Entry No. 72-1).) Because the brief contains the same arguments as set forth in the response and provides more detail, the Court summarizes only the brief in this Order.

The Court discusses this issue in more detail infra.

Defendant filed both a response and a brief in response to Plaintiff's Fourth Motion in Limine. (Resp. Pl.'s Fourth Mot. Limine (Docket Entry No. 73); Br. Resp. Pl.'s Fourth Mot. Limine (Docket Entry No. 73-1).) Because the brief contains the same arguments as set forth in the response and provides more detail, the Court has summarized only the brief in this Order.

Defendant filed both a response and a brief in response to Plaintiff's Fifth Motion in Limine. (Resp. Pl.'s Fifth Mot. Limine (Docket Entry No. 74); Br. Resp. Pl.'s Fifth Mot. Limine (Docket Entry No. 74-1).) Because the brief and the response differ somewhat, the Court has summarized both documents in this Order.